# In the
# United States Court of Appeals for the Third Circuit

Case No. 23-2698

DERRICK EVANS,

*Appellant,*

v.

THEHUFFINGTONPOST.COM, INC.,

*Appellee.*

*On Appeal from an Order Entered by the United States District Court for the District of Delaware (The Honorable Gregory B. Williams)*

## BRIEF OF APPELLANT
## DERRICK EVANS

**WISE CARTER CHILD & CARAWAY, P.A.**

Charles E. Cowan, Esq. (#104478)
John P. Sneed, Esq. (#7652)
401 E. Capitol Street
Jackson, Mississippi 39201
(601) 968-5500
cec@wisecarter.com
jps@wisecarter.com

**SAUL EWING LLP**

James D. Taylor, Jr., Esq. (#4009)
Michelle C. Streifthau-Livizos (#6584)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19801
(302) 421-6800
james.taylor@saul.com
michelle.streifthau-livizos@saul.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................iv

INTRODUCTION..................................................................................1

STATUTES RULES AND REGULATIONS..........................................3

STATEMENT OF JURISDICTION.........................................................3

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................4

STATEMENT OF RELATED CASES AND PROCEEDINGS .............................4

STATEMENT OF THE CASE ................................................................5

    Background ..................................................................................5

    Procedural History and Ruling Presented for Review .......................6

SUMMARY OF ARGUMENT ...............................................................7

ARGUMENT .......................................................................................8

    Standard of Review...........................................................................8

  I.  The District Court Erred by Applying New York Substantive
     Law to Evans' Defamation Claim.............................................9

      A.   The overwhelming weight of Delaware authority
           counseled the District Court to apply Mississippi law ....................15

      B.   The District Court's decision inexplicably rejected Delaware
           authority and rejected the plaintiff-domicile presumption
           without a "substantially significant consideration" to do so ...........21

         i.   The District Court's Order ......................................................21

         ii.   Delaware law has never deemed a state's singular
              interest in a particular law to be of great weight in its

choice of law analysis ............................................................26

CONCLUSION AND RELIEF REQUESTED........................................................32

CERTIFICATE OF BAR ADMISSION ...............................................................33

CERTIFICATE OF COMPLIANCE .....................................................................34

CERTIFICATE OF FILING AND SERVICE........................................................35

# TABLE OF AUTHORITIES

## Cases

*Adelson v. Harris*,
   973 F. Supp. 2d 467 (S.D.N.Y. Sep. 30, 2013) .................................................28

*Aoki v. Benihana, Inc.*,
   839 F. Supp. 2d 759 (D. Del. 2012) ...........................................................*passim*

*Avenatti v. Fox News Network, LLC*,
   2021 WL 3603035, *1 (D. Del. Aug. 13, 2021) .........................................19, 20

*Berg Chilling Systems v. Hull Corp*,
   435 F.3d 455 (3d Cir. 2006). ....................................................................9

*Boutiette v. Dickinson*,
   54 Mass. App. Ct. 817 (2002) ............................................................10

*Cheng v. Neumann*,
   2022 WL 326785, *1 (D. Maine Feb. 3, 2022) .................................................28

*Condit v. Dunne*,
   317 F. Supp. 2d 344 (S.D.N.Y. 2004) ....................................................27

*Criswell v. McFadden*,
   2006 WL 435717, *1 (D. Del. Feb. 23, 2006) ....................................................10

*Evans v. Huffington Post.com, Inc.*,
   2020 WL 6786325, *1 (S.D. Miss. Sept. 11, 2020) .............................................5

*Evans v. Huffington Post.com, Inc.*,
   2022 WL 21320601, *1 (S.D. Miss. Apr. 27, 2022). ...........................................6

*FinancialApps, LLC v. Envestnet, Inc.*,
   2023 WL 4744255, *1 (D. Del. July 25, 2023).................................................16

*Fowler v. UPMC Shadyside*,

578 F.3d 203 (3d Cir. 2009). ..............................................................................8, 9

*Franklin Prescriptions, Inc. v. The New York Times, Co.*,
    267 F. Supp. 2d 425 (E.D. Pa. 2003) ........................................................27, 28

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974). ....................................................................................29

*Johnson v. TheHuffintonPost.com, Inc.*,
    21 F.4th 314 (5th Cir. 2021) ..........................................................................5, 6

*Johnson v. Verizon CMP Holdings, LLC*,
    2020 WL 8116186, *1 (S.D. Tex. Dec. 18, 2020) ................................................6

*Johnson v. Warner Brothers Entertainemnt, Inc.*,
    2017 WL 588714, *1 (D. Del. Feb. 14, 2017) ..........................................*passim*

*Kamelgard v. Macura*,
    585 F.3d 334 (7th Cir. 2009)....................................................................13, 29

*Kaneff v. Del. Title Loans, Inc.*,
    587 F.3d 616 (3d Cir. 2009) ...........................................................................9

*Loughlin v. Harada*,
    2021 WL 4439539, *1 (D. Del. Sep. 28, 2021) ................................................16

*Machleder v. Diaz*,
    538 F. Supp. 1364 (S.D.N.Y. 1982) ................................................................29

*Marcone v. Penthouse Intern. Mag. for Men*,
    754 F.2d 1072 (3d Cir. 1985) .........................................................................16

*McCann v. Newman Irrevocable Trust*,
    458 F.3d 281 (3d Cir. 2006). .........................................................................3, 4

*Phillips v. County of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) ...........................................................................9

*Pulliam v. Gulf Lumber Co.*,
    312 F.2d 505 (5th Cir. 1963) .........................................................................10

*Ranbaxy v. Laboratories, Inc. v. First Databank, Inc.*,
2014 WL 982742, *1 (M.D. Fla. Mar. 12, 2014) ................................................28

*Schering Corp. v. First DataBank, Inc.*,
2007 WL 1176627, *1 (N.D. Cal. Apr. 20, 2007) ........................................28, 29

*Schmidt v. Wash. Newspaper Pub. Co.*,
2019 WL 4785560, *1 (Del. Super. Ct. Sep. 30, 2019).  ............................20, 23

*Stephen G. Perlman, Rearden LLC v. Vox Media, Inc.*,
2015 WL 5724838, *1 (Del. Ch. Sep. 30, 2015) .........................................17, 18

*System Operations, Inc. v. Scientific Games Dev. Corp.*,
555 F.2d 1131 (3d Cir. 1977) .....................................................................30, 31

*Triestman v. Slate Grp., LLC*,
2020 WL 1450562, *1 (D. Del. Mar. 25, 2020) .....................................20, 21, 23

## Statutes

28 U.S.C. § 1332(a)(1) ..........................................................................................3
28 U.S.C. §  1291 .................................................................................................4
10 Del. C. § 8121 .............................................................................................9, 10
NY CIV RTS § 76-a ...........................................................................................26
10 Del. C. § 8119 ...............................................................................................10
10 Del. C. § 8118 ...............................................................................................10
M.G.L.A. 260 § 4 ...............................................................................................10

## Rules

Fed. R. App. P. 41(a)(1)(A)(i) ...............................................................................4

## Other Authorities

Restatement (Second) of Conflicts ("Restatement") § 6 ...................................22, 24
Restatement (Second) of Conflicts ("Restatement") § 145 ..............................*passim*
Restatement (Second) of Conflicts ("Restatement") § 150 ..............................*passim*
Mississippi Senate Bill 2628 (2022 Regular Session) ...........................................31

## **INTRODUCTION**

This appeal involves a clear-cut case of defamation. Plaintiff Derrick Evans ("Evans") is a Mississippi citizen who was defamed by Defendant TheHuffingtonPost.com, Inc. ("HuffPost") in a story it published on its website on September 20, 2018 about the high school years of Justice Brett Kavanaugh. R. 3, at 1-3, Appx017-019. HuffPost published this article during the midst of Justice Kavanaugh's Senate confirmation proceedings, and it negatively portrayed Justice Kavanaugh and his time spent at Georgetown Preparatory School in Bethesda, Maryland. R. 3-2, at 3-6, Appx054-057. In that article, HuffPost's reporter Ashley Feinberg falsely claimed that Evans procured ("scored") the cocaine that ultimately caused the death of Evans' family friend David Kennedy, who was the fourth of Bobby and Ethel Kennedy's eleven children. Evans attended high school at Georgetown Prep with David and Douglass Kennedy, along with Justice Kavanaugh. R. 3, at 1, Appx017. When informed of the falsity of the report, HuffPost reiterated the claim, publishing it yet again. R. 3, at 2-3, Appx018-019. HuffPost defamed Evans and injured him in Mississippi, where he resided at the time of publication. R. 3, at 4, Appx020.

Evans is a sixth-generation native of Turkey Creek, coastal Mississippi's historic Black settlement founded by Evans' ex-slave ancestors in 1866 on the Gulf of Mexico during Reconstruction. R. 3, at 5, Appx021. Evans did not grow up

wealthy but obtained a full academic scholarship to Georgetown Prep in 1982. R. 3, at 5, Appx021. As one of the only Black students at Georgetown Prep, Evans vowed to excel and make positive changes in the world and has spent his adult life focusing on disaster relief, environmental causes, historic preservation, and matters of justice. R. 3, at 5, Appx021. Further, to continue his life goals, Evans has served at times as a college professor/lecturer at times and at other times a full-time environmental, educational, and social justice advocate. R. 3, at 6, Appx022. Evans also founded and led nonprofits that improve educational opportunities for students and enhance the Mississippi communities in which he grew up. R. 3, at 5-6, Appx021-022.

After he was defamed, Evans first sued HuffPost in the Southern District of Mississippi, but his suit was dismissed without prejudice for lack of personal jurisdiction. When he refiled in Delaware, the state of HuffPost's incorporation, HuffPost moved to dismiss, asking the District Court to apply New York law and hold Evans' claims as time-barred under New York's statute of limitations. HuffPost attempted to leverage New York's short and inequitable statute of limitation after Evans lost the personal jurisdiction fight. It argued that, under Delaware's choice of law analysis, New York's interest in its 2020 anti-strategic lawsuits against public participation (anti-SLAPP) law weighed most heavily in

favor of applying New York law, rather than the law of Evans' home state Mississippi.

The District Court agreed and dismissed Evans' suit. It did so despite the overwhelming weight of Delaware choice of law authority that pointed to applying Mississippi law, the law of the state where Evans resided. It applied a flawed choice of law analysis, failing to give the presumption that Mississippi law should generally apply the weight Delaware law required it to. It also gave New York's interest in its anti-SLAPP law greater weight than Mississippi's interests in protecting its citizens from defamation despite overwhelming case law establishing that Mississippi's interest is entitled to greater weight in defamation cases. Because Delaware courts would have applied Mississippi substantive law to Evans' defamation claim, the District Court erred by invoking New York substantive law to hold that Evans' claims were time barred. Therefore, Evans appeals.

## STATUTES, RULES, AND REGULATIONS

Applicable statutes, rules, and regulations are readily available, and citations are contained in this Brief.

## STATEMENT OF JURISDICTION

The District Court had diversity jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeded the value of $75,000 and is between citizens of different states. *McCann v. Newman Irrevocable Tr.*, 458 F.3d

281, 286 (3d Cir. 2006). This Court has appellate jurisdiction because the District Court's decision was a final decision under 28 U.S.C. § 1291. Evans' appeal is timely because he filed it on September 14, 2023, and the District Court entered its order granting HuffPost's motion to dismiss and dismissing Evans' claims with prejudice on August 16, 2023. *See* Fed. R. App. P. 4(a)(1)(A) (notice of appeal must be filed within 30 days after entry of the order appealed from).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.  Whether the District Court erred in granting HuffPost's motion to dismiss by finding that, under a Delaware choice of law analysis, HuffPost presented "sufficiently significant considerations" to warrant applying New York law instead of Mississippi law, the law of the state of Derrick Evans' residence.

Raised: Plaintiff's Responsive Brief in Opposition to Defendant's Motion to Dismiss, R 14, at 6-25, Appx177-196.

Objected to: Not applicable.

Ruled upon: Memorandum Order, R. 19, at 1-11, Appx006-016.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This proceeding has not been before this Court previously. Evans is unaware of any related cases or proceedings responsive to Third Circuit Local Appellate Rule 28.1(a)(2).

**STATEMENT OF THE CASE**

## I.  **Background**

Evans filed a libel lawsuit against HuffPost and its former reporter Ashley Feinberg in the United States District Court for the Southern District of Mississippi on August 21, 2019.  The Mississippi district court granted Evans the right to conduct jurisdictional discovery.  *Evans v. Huffington Post.com, Inc.*, 2020 WL 6786325, at *1 (S.D. Miss. Sept. 11, 2020).  While the parties conducted jurisdictional discovery, a Texas district court issued an unfavorable personal jurisdiction opinion in a similar internet defamation case filed against HuffPost. *Johnson v. Verizon CMP Holdings, LLC*, 2020 WL 8116186, at *1 (S.D. Tex. Dec. 18, 2020).  Evans and HuffPost ultimately completed jurisdictional discovery and briefing on HuffPost's renewed motion to dismiss for lack of personal jurisdiction on April 23, 2021.

On December 23, 2021 a panel of the United States Court of Appeals for the Fifth Circuit issued a split decision affirming the dismissal of the Texas plaintiff's claims against HuffPost for lack of personal jurisdiction.  *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314 (5th Cir. 2021).  The Texas plaintiff petitioned for rehearing *en banc* and Evans filed an amicus brief urging the Fifth Circuit to review the *Johnson* decision *en banc* and overturn it because its holdings

were unfavorable to Evans' position on HuffPost's pending motion to dismiss the Mississippi case.

On April 27, 2022, the Fifth Circuit issued its decision denying the petition for rehearing; it had taken an *en banc* poll of the active judges on the court and seven voted to take the decision *en banc* while ten voted against.[1]  *Johnson v. TheHuffingtonPost.com, Inc.*, 32 F.4th 488 (5th Cir. 2022).  On April 28, 2022, the Mississippi district court granted HuffPost's motion to dismiss for lack of personal jurisdiction, relying on the now-binding Fifth Circuit precedent. *Evans v. Huffington Post.com, Inc.*, 2022 WL 21320601 (S.D. Miss. Apr. 27, 2022).

## II.   Procedural History and Ruling Presented for Review

Evans refiled this suit in the United States District Court for the District of Delaware on September 8, 2022.  Complaint, R. 1, at 1-17.  Evans amended his complaint on September 22, 2022 to correct a potential misnomer in HuffPost's corporate name.  Complaint, R. 3, at 1-17, Appx017-036.  In response, HuffPost filed a motion to dismiss on November 16, 2022 in which it contended that New York substantive law should apply to Evans' claim and that his claim was time-barred if New York law applied.  Motion to Dismiss, R. 9, at 5-25, Appx067-096.

---

[1] The Honorable Jennifer Walker Elrod wrote a well-reasoned dissent arguing that the Fifth Circuit had now created a circuit split on internet defamation personal jurisdiction cases within the Fourth and Ninth Circuits. *Johnson*, 32 F.4th at 489-95.

On December 14, 2022, Evans filed a response in opposition, contending that a Delaware choice of law analysis required application of Mississippi law, the state where Evans resided, rather than New York law.  R 14, at 1-26, Appx172-197. Evans contended that Mississippi law applied under Delaware's choice of law analysis, and, under Mississippi law, his claim of defamation was timely.  R 14, at 1-26, Appx172-197.  HuffPost filed a reply in support of its motion to dismiss on January 6, 2023.  R. 15, at 1-15, Appx229-243.

Both parties filed requests for oral argument.  R. 17.  R. 18.  The District Court made no ruling on the requests for oral argument and, on August 16, 2023, entered its Memorandum Order ("Order") granting HuffPost's motion to dismiss and dismissing Evans' claims with prejudice.  Memorandum Order, R. 19, Appx006.  On September 14, 2023, Evans timely filed his notice of appeal.  R. 20, Appx005.  This Court's Clerk docketed the appeal that same day.  R. 21.

## SUMMARY OF THE ARGUMENT

This Court should reverse the District Court's Order and remand this case for further proceedings.  The District Court's August 16, 2023 decision contravened the overwhelming weight of Delaware authority that counseled it to apply Mississippi substantive law to Evans' claim of defamation against HuffPost.  The District Court rejected the import of at least seven prior decisions in which Delaware courts have conducted a choice of law analysis in a similar aggregate defamation context and

concluded that barring "sufficiently significant considerations" that warrant otherwise, Delaware law required them to apply the substantive law of the state where the defamed plaintiff resides. The District Court disposed of this controlling law in a single footnote, claiming that none of those cases had any bearing because they did not involve a defendant's interest in having its state's anti-SLAPP law applied.

The District Court recited no authority for why it spotlighted New York's interest in its anti-SLAPP law, which was passed *after* the defamatory statements at issue in this lawsuit were published. The District Court erroneously elevated New York's interest in its anti-SLAPP law over that of Mississippi's far more significant interest in protecting its citizens from defamatory statements by unscrupulous internet media companies. Courts applying Delaware law have consistently held that the law of the plaintiff's residence applies in all but the rarest of cases. This is not one of those rare cases. The District Court should have ruled that Mississippi law applied under Delaware's choice of law analysis and denied HuffPost's motion because Evans' claims are not time-barred under Mississippi law.

## ARGUMENT

### Standard of Review

This Court reviews decisions granting motions to dismiss de novo, under a "plenary standard." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 (3d Cir. 2009)

(citation omitted).  Under this standard of review, this Court gives *no* deference to the District Court's decision, and it reviews the propriety of the District Court's decision "anew." *Phillips v. County of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008). This plenary de novo standard of review applies in the same fashion when this Court applies a choice of law analysis to "determine which state's substantive law governs[.]" *Berg Chilling Sys. Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006) (citation omitted).

## I.     The District Court Erred by Applying New York Substantive Law to Evans' Defamation Claim.

The legal analysis that the District Court was required to conduct is not in dispute.  Both parties agree that when federal jurisdiction is based on diversity of citizenship, as it was here, the District Court was required to apply Delaware's (the forum state's) choice of law rules.  *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 621 (3d Cir. 2009).  Those choice of law rules include Delaware's borrowing statute, which states that when a non-Delaware resident files suit in Delaware based on a cause of action arising outside of Delaware, the court should apply the *shorter* of either Delaware's statute of limitations or that of the state where the cause of action arose.  *Johnson v. Warner Bros. Ent., Inc.*, 2017 WL 588714, *3 (D. Del. Feb. 14, 2017), citing 10 Del. C. § 8121.  Here, there was no dispute that Evans' defamation

claim would be timely under Delaware substantive law.[2]  It was also timely under

both Mississippi law[3] and Massachusetts law (the other state HuffPost claimed

Evans had some ties to).[4]  But HuffPost contended New York law applied because,

while New York had a one-year statute of limitations for defamation claims, its

savings statute expressly *excluded* prior dismissals for lack of personal jurisdiction.

Thus, if New York law applied, Evans' claim was untimely.  The question, then, for

the District Court was where did Evans' cause of action "arise" for purposes of

Delaware's borrowing statute, 10 Del. C. § 8121.  In answering that question,

---

[2] Under Delaware law, claims for defamation have a two-year statute of limitations under 10 Del. C. § 8119, and Delaware's savings statute, 10 Del. C. § 8118, saves the claim because it was originally dismissed for a matter of form (*i.e.,* lack of personal jurisdiction).  *Criswell v. McFadden*, 2006 WL 435717, *4-5 (D. Del. Feb. 23, 2006) (action brought originally in Pennsylvania, but dismissed for lack of personal jurisdiction, was timely when refiled in Delaware because of Delaware's savings statute).

[3] Mississippi has a one-year statute of limitations for defamation claims.  *Staheli v. Smith*, 548 So. 2d 1299, 1302 (Miss. 1989) (citation omitted).  Mississippi's savings statute saves claims dismissed for a "matter of form," which include dismissals for lack of personal jurisdiction.  *Pulliam v. Gulf Lumber Co.*, 312 F.2d 505, 510 (5th Cir. 1963).

[4] Defamation claims under Massachusetts law have a three-year statute of limitations.  M.G.L.A. 260 § 4.  Massachusetts' savings statute grants a plaintiff one year to refile suit if a matter is dismissed for a matter of form and dismissals for lack of personal jurisdiction are a "matter of form" as that phrase is defined by Massachusetts' savings statute.  *Boutiette v. Dickinson*, 54 Mass. App. Ct. 817 (2002).

Delaware law, in turn, requires application of its choice of law analysis. *Johnson*, 2017 WL 588714, at *3.

Delaware law incorporates the "conflicts of law provisions in the Restatement (Second) of Conflicts." *Aoki v. Benihana, Inc.*, 839 F. Supp. 2d 759, 764 (D. Del. 2012) (citation omitted). Restatement (Second) of Conflicts (the "Restatement") § 145 states: "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." Known as the "most significant relationship" test, Delaware courts generally evaluate the relative importance of the following four factors:

> '(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered.'

*Aoki*, 839 F. Supp. 2d at 765 (quoting Restatement § 145). But this four-factor test is not particularly well-suited for application when a tort is committed in multiple states or in instances where a defamatory publication is published on the internet and available for people in every state to digest. To address this problem, Delaware courts apply Restatement § 150, which applies when there is a claim of widespread or "aggregate" defamation. *Id*. While Restatement § 150(1) states that courts should still apply the four-factor "most significant relationship test" in §145, Restatement

§ 150(2) counsels that the outcome should usually be the state of the plaintiff's residence: "When a natural person claims that he has been defamed by an aggregate communication, the state of the most significant relationship *will usually be the state where the person was domiciled at the time, if the matter complained of was published in that state*." Restatement § 150(2)  (emphasis added).

Expounding upon Restatement § 150, Delaware law says that in "a defamation case *there is a presumption that 'the local law of the state of the plaintiff's domicile applies* unless, with respect to the particular issue, one of the other states has a more significant relationship to the occurrence and to the parties." *Johnson*, 2017 WL 588714, at *3 (citations omitted) (emphasis added).  Said differently, Delaware law says "[t]he state where the injured party is domiciled (for natural persons) . . . will usually be the state of most significant relationship for claims of defamation by an aggregate communication that was published in that state." *Aoki*, 839 F. Supp. 2d at 765 (citing Restatement §§ 150(2), (3)).  Because an internet publication meets the definition of an "aggregate communication" under Delaware law, "[w]hen there is widespread dissemination of allegedly defamatory matter, such as via the internet, the most important consideration in choosing the applicable law is the residence of the party allegedly defamed." *Id*. (citation omitted).

In sum, in an aggregate communication defamation case, Delaware law treats the plaintiff's domicile as presumptively providing the governing law.  The logic

behind this rule is that "'defamation produces a special kind of injury that has its principal effect among one's friends, acquaintances, neighbors and business associates in the place of one's residence.'" *Aoki*, 839 F. Supp. 2d at 765 (quoting *Fuqua Homes, Inc. v. Beattie*, 388 F.3d 618, 622 (8th Cir. 2004)). This choice of law analysis ends up being *injury* focused. It is the preeminent concern for aggregate defamation cases. This makes sense because the place in which the plaintiff lives is "where, according to Learned Hand, he feels the sting of defamation." *Kamelgard v. Macura*, 585 F.3d 334, 342 (7th Cir. 2009) ("[T]he gravamen of the wrong in defamation is not so much the injury to reputation, measured by the opinions of others, as the feelings, that is, the repulsion or the light esteem, which those opinions engender.") (internal quotation marks and citation omitted).

To be fair, this heavy presumption can be overcome, but only in extremely rare cases. Delaware law is clear that "[t]o overcome the presumption established under Restatement 150, there must be *sufficiently significant considerations*." *Id.* (emphasis added). The comment to Restatement § 150 provides courts guidance in assessing a party's arguments attempting to overcome this plaintiff-domicile presumption. It notes that:

> A state, which is not the state of the plaintiff's domicil, may be that of most significant relationship if it is the state where the defamatory communication caused plaintiff the greatest injury to his reputation. This may be so, for example, in situations where (a) the plaintiff is better known in this state than in the state of his domicil, or (b) the matter claimed to be defamatory related to an activity of the plaintiff

that is principally located in this state, or (c) the plaintiff suffered greater special damages in this state than in the state of his domicil, or (d) the place of principal circulation of the matter claimed to be defamatory was in this state.

Restatement § 150 cmt. e. This exception acknowledges that in some cases a plaintiff may feel the greatest injury in a state other than the state where the plaintiff resides. But in this case, that Restatement comment's exception has no application because there was <u>no</u> basis for the District Court to conclude that any of those situations in Comment e applied. First, Evans was not better known in New York than in Mississippi. Second, HuffPost's defamatory publication had nothing to do with New York or any connection by Evans with New York. Third, Evans did not suffer any special injury in New York because he had absolutely no connection to New York. Finally, New York was not the principal place of the defamatory article's circulation. It was published on the internet for digestion in all fifty states.

Given that background on the applicable law, this appeal is about whether HuffPost advanced "sufficiently significant considerations" to warrant applying New York law instead of Mississippi law. HuffPost bore the burden, as the moving party, to establish that "sufficiently significant considerations" existed to overcome this presumption—a presumption that no Delaware court has ever concluded was overcome. Respectfully, the District Court disregarded the overwhelming weight of Delaware authority that instructed it to apply Mississippi law rather than New York law. As explained below, Evans does not use the term "overwhelming" lightly. The

number of federal and state court decisions applying Delaware's choice of law analysis and adopting the law of the plaintiff's domicile are legion. Moreover, that same law shows serious flaws in the District Court's weighing of factors.

### A. The overwhelming weight of Delaware authority counseled the District Court to apply Mississippi law.

Delaware's choice of law analysis would have adopted the substantive law of Mississippi, had the District Court properly applied it. Evans was a Mississippi resident and suffered both personal and reputational injury in Mississippi when HuffPost published the defamatory article. R. 3, at 4, Appx020. HuffPost disputed this fact with presentation of matters outside the four corners of Evans' Complaint,[5] R. 10 and R.10-1, Appx098-102, and Appx103-171, but the District Court declined to rely on extrinsic evidence to decide HuffPost's Fed. R. Civ. P. 12(b)(6) motion and properly recognized that Evans pled that he was a resident and citizen of Mississippi. Order, R. 19, at 3, Appx008. Accordingly, the District Court concluded Evans was a resident of Mississippi. Order, R. 19, at 3, Appx008.

Upon its conclusion that Evans was a resident of Mississippi, Delaware law counseled the District Court to apply Mississippi substantive law to govern Evans' defamation claim. While the Third Circuit has not applied a Delaware choice of law

---

[5] HuffPost claimed Evans was just as much a resident of Massachusetts as he was Mississippi. But as noted *supra*, Evans' defamation claim would have been timely if Massachusetts law applied.

analysis in an aggregate defamation context,[6] Delaware courts *have* done so at least

seven times (by Evans' count) and in each of those cases the courts *universally* found

that the state with the most significant relationship was the one in which the plaintiff

resided. *See infra*. In fact, the cases enforcing this plaintiff-domicile presumption

are so exhaustive that courts have simply stated that the presumption is, in fact, the

default choice. *FinancialApps, LLC v. Envestnet, Inc.*, 2023 WL 4744255, at *8 n.

10 (D. Del. July 25, 2023) ("Because [the defendant] resides in California, California

defamation law would apply to the [defendant's] defamation counterclaim."); 

*Loughlin v. Harada*, 2021 WL 4439539, at *4 n. 2 (D. Del. Sep. 28, 2021)

("Delaware's choice of law rules provide for application of the laws of the plaintiff's

domicile" in a "case involving . . . internet-published defamations[.]").

 While great in number, the Delaware decisions applying a Delaware choice

of law analysis and enforcing the strength of the plaintiff-domicile presumption must

be discussed because they all rejected parties' similar efforts to overcome the

plaintiff-domicile presumption in Restatement § 150. In *Aoki v. Benihana, Inc.*, the

defendant issued a nationwide press release, defaming several plaintiffs. 839 F.

Supp. 2d at 762-63. The court applied Delaware's choice of law analysis to decide

---

[6] The Third Circuit did apply a Pennsylvania choice of law analysis in a defamation suit against a magazine publisher and concluded that Pennsylvania law governed because the plaintiff was a Pennsylvania resident "and any harm to his reputation that may have occurred centered in that state[.]" *Marcone v. Penthouse Intern. Mag. for Men*, 754 F.2d 1072, 1077 (3d Cir. 1985).

which state had the most significant relationship to the occurrence and the parties. *Id*. at 765. It recognized in cases involving widespread dissemination of allegedly defamatory material, the most important consideration would be "the residence of the party allegedly defamed." *Id*. The defendant argued against the presumption, contending "the choice of law turn[ed] on the location of publication, and that publication took place in Florida and possibly New York." *Id*. But both plaintiffs resided in New York, and New York law presumably applied unless there were "significantly sufficient considerations . . . to overcome this presumption." *Id*. The defendant argued Florida law applied because the press release was written in Florida, by a Florida corporation, and contained allegations involving a separate lawsuit that caused injury to a Florida-headquartered corporation in Florida. *Id*. The district court rejected these arguments, holding that the defendant had not provided "significantly sufficient considerations" to warrant applying the law of a state other than the state where the plaintiffs resided. *Id*.

In an internet aggregate defamation case, *Stephen G. Perlman, Rearden LLC v. Vox Media, Inc.*, 2015 WL 5724838, *1-7 (Del. Ch. Sep. 30, 2015), the Delaware Court of Chancery conducted a choice of law analysis to a group of individuals' defamation claims against an internet news publisher. The defendant Vox Media published an internet article accusing the plaintiffs of questionable business conduct. *Id*. at *2-6. The plaintiffs sued and claimed Delaware substantive law applied to

their claims because: (1) the defamatory allegations in the article "relate[d] solely to [the plaintiffs'] conduct as a fiduciary of a Delaware corporation," (2) the complaint focused on the plaintiffs' activity located mainly in Delaware, (3) Vox was a Delaware corporation that published the articles about a Delaware fiduciary, (4) nearly all of the companies one of the plaintiffs "incubated and controls [we]re formed under the laws of Delaware," and (5) plaintiffs were better known in Delaware than in California. *Id*. at *11. Thus, the plaintiffs contended Delaware was "the state in which the allegedly defamatory communication caused them the greatest injury to their reputations." *Id*.

The Court of Chancery disagreed, holding that the law of California, the state of the plaintiffs' residence, applied to the claims. *Id*. It noted the allegations of a significant relationship between the plaintiffs' claims and Delaware were similar to those found in *Aoki*. *Id*. (citing *Aoki*, 839 F. Supp. 2d at 768). The Court of Chancery acknowledged the greatest weight should be (and would be) given to the residence of the injured parties. *Id*. This result adhered to the Restatement that required "the local law of the state of the plaintiff's domicile appl[y] 'unless, with respect to the particular issue, one of the other states has a more significant relationship to the occurrence and the parties.'" *Id*.

In another internet defamation case, *Johnson v. Warner Bros. Ent., Inc.*, an individual sued various media companies over a defamatory article published on the

tmz.com website. 2017 WL 588714, *1-2 (D. Del. Feb. 14, 2017). The district court undertook a Delaware choice of law analysis to decide whether Delaware or Pennsylvania law applied. *Id*. at *3. The court noted the well-established plaintiff-domicile presumption, but the plaintiff argued against it, contending he had substantial connections to another state (Delaware) and that "a majority of the Defendants [we]re incorporated and operate[d] in Delaware." *Id*. The defendants disagreed, asserting the plaintiff's cause of action arose in Pennsylvania because it was his residence at the time the statements were made. *Id*. at *4. They argued the plaintiff failed to rebut the strong presumption that Pennsylvania law would apply despite the fact the story may have been published by Delaware defendants based on Delaware activity. *Id*. The district court agreed, noting that the plaintiff failed to overcome the presumption. *Id*. There was no unique injury in Delaware and the court noted the plaintiff had been injured "across the United States." *Id*. The court rejected the plaintiff's contention that because the defendants were incorporated in Delaware, that was sufficient to overcome the plaintiff-domicile presumption, reasoning that to accept such would place undue weight on the defendants' states of incorporation. *Id*.

Other cases applying Delaware's choice of law analysis in the multi-state defamation context have uniformly applied the plaintiff-domicile presumption to invoke the law of state where the plaintiff resides. For example, in *Avenatti v. Fox*

*News Network, LLC*, 2021 WL 3603035, *2 (D. Del. Aug. 13, 2021), the district court applied California law to Avenatti's defamation claims against Fox News because Avenatti resided in California at the time of the publication and had "not shown that he suffered a unique, or more significant, injury in a different state."[7] *Id.*

In yet another recent multi-state aggregate defamation case, the Superior Court of Delaware applied the law of California, the state where the plaintiff lived at the time of the defamatory publication. *Schmidt v. Washington Newspaper Pub. Co.*, 2019 WL 4785560, at *3-4 (Del. Super. Ct. Sep. 30, 2019). In applying the law of the plaintiff's residence (California), the Delaware Superior Court noted that Delaware law underscored a desire that its residents collect the full amount of damages available to them and that they *not be barred from collection of full damages because of a foreign state's substantive laws*.[8] *Id.* (citation omitted).

And in yet another Delaware aggregate defamation claim, a plaintiff sued a media company over an internet article it published. *Triestman v. Slate Grp., LLC*, 2020 WL 1450562, at *1 (D. Del. Mar. 25, 2020). The plaintiff was domiciled in

---

[7] Avenatti's argument tracked the Restatement's guidance about one occasion when the plaintiff-domicile presumption may be overcome. Restatement § 150 cmt. e. If it is shown a plaintiff suffered a greater injury in a state that is different from where the plaintiff resides, the presumption may be overcome. *Id.*

[8] Mississippi certainly has a strong interest in Evans (one of its residents) not being kicked out of court because of an overly harsh New York substantive law that differs substantially from Mississippi's law on the subject.

New Jersey and that was "the place the injury was felt." *Id*. at *3. The plaintiff contended Illinois law applied, however, because the writing and publishing of the article were performed in Illinois. *Id*. The court rejected that contention, noting it would uphold the presumption that the state of plaintiff's residence would provide the applicable law. *Id*. The court noted that plaintiff cited *no* Delaware authority to support rejecting "the presumption in favor of the Plaintiff's domicile" on that basis.[9] *Id*.

**B.** **The District Court's decision inexplicably rejected Delaware authority and it rejected the plaintiff-domicile presumption without any sufficiently significant reason to do so.**

**i.** **The District Court's Order.**

The District Court's decision is the first instance known to Evans in which a Delaware court (state or federal) has ever adopted the substantive law of a state other than the one in which the plaintiff resides in the aggregate defamation context. The District Court's Order began by tracking the above Delaware choice of law analysis. Order, R. 19, at 3-5, Appx008-010. It also expressly noted the plaintiff-domicile presumption and the purpose behind it. R. 19, at 4-5, Appx009-010. It noted that once the presumption is established, it must apply the "general tort principles in

---

[9] Not unlike the defendant in *Slate Group, LLC*, HuffPost provided no Delaware authority to show that New York's interest in its anti-SLAPP law should overcome the plaintiff-domicile presumption. 2020 WL 1450562, at *3.

§ 145 of the Restatement" and then consider "the competing state interests under the principles outlined in § 6 of the Restatement."  R. 19, at 5, Appx010.

The District Court began its analysis with the first factor of § 145, "the place where the injury occurred," but inexplicably stated this first factor "weighs slightly" in favor of Mississippi law.  R. 19, at 7, Appx011.  The District Court claimed that "in multistate defamation cases, 'the place of injury will not play an important role in the selection of the state of the applicable law' when the 'injury has occurred in two or more states.'"  R. 19, at 7, Appx012, quoting Restatement § 145 cmt. 2(e).

Yet the principle it cited relates to the four-factor test generally and should not overcome the importance of the place in which the plaintiff suffers the *greatest* injury in aggregate defamation cases.  In cases of aggregate defamation, that location is his or her domicile.  Restatement § 150 cmt. e.  Defamation rules "are designed to protect a person's interest in his reputation" and "the state of the plaintiff's domicile" is "usually" the place where "the plaintiff has suffered the greatest injury by reason of his loss of reputation."  *Id*.

In adjudging the general statement in Restatement § 145 cmt. 2(e) to overcome the express instruction of importance in Restatement § 150 and its accompanying comment e, the District Court erred by concluding this factor's weight was only "slight."  Defamation involves a "special kind of injury that has its principal effect among one's friends, acquaintances, neighbors and business

associates in the place of one's residence.'" *Aoki*, 839 F. Supp. 2d at 765 (quoting *Fuqua Homes, Inc.*, 388 F.3d at 622. By weighing Evans' state of residence (Mississippi) law only slightly, the District Court erred. Delaware law required weighing this factor heavily and the District Court inexplicably did not.

The District Court next stated that under the second factor, "the place where the conduct causing the injury occurred," it weighed "slightly in favor of applying New York law." Order, R. 19, at 7, Appx012. But the District Court assumed, without any evidence or statements pled supporting such, that "[t]he decision to publish the Article was likely made in New York because Huffpost's headquarters is located in New York." R. 19, at 7, Appx012, quoting Restatement § 145 cmt. 2(e). Of note, Delaware courts have never considered this second factor to be an important one in their choice of law analyses. *See Triestman v. Slate Grp., LLC*, 2020 WL 1450562, at *3; *Johnson*, 2017 WL 588714, at *3-4; *Aoki*, 839 F. Supp. 2d at 765; *Schmidt*, 2019 WL 4785560, at *3-4.

Indeed, in <u>no</u> case applying a Delaware choice of law analysis has the location where the publication was drafted, or the location where the decision was made to publish, *ever* overcome the plaintiff-domicile presumption. The District Court also ignored the fact that the tortious "conduct" at issue was a publication on an internet website, which occurred (was available for access) everywhere instantaneously. The

conduct occurred on the internet, not in New York. The District Court erred by concluding this factor favored application of New York law.

As for the third factor, the residence/location of the parties, the District Court noted the factor was neutral because Evans was a "resident and citizen of Mississippi" and HuffPost was incorporated in Delaware and its principal place of business was in New York. Memorandum Order, R. 7, at 7, Appx012. As for the fourth factor, the place where the relationship (if any) between the parties is centered, the District Court stated it was neutral because it was uncertain from the face of the Complaint whether the parties had any relationship.[10] R. 19, at 7, Appx012. Thus, the District Court concluded that two factors weighed "slightly" in favor of either state's law and two were neutral, causing the analysis to be a "wash." R. 19, at 7, Appx012.

In the face of its four-factor test, the District Court's ruling purportedly hinged on the policy interest factors listed in Restatement § 6. R. 19, at 7-8, Appx012-013. The District Court said it was required to "'give consideration to the relevant policies of all potentially interested states and the relevant interests of those states in the

---

[10] In his response to HuffPost's motion to dismiss, Evans explained HuffPost had interacted with him twice in the years prior to 2018. R. 14, at 15, Appx190. HuffPost had published a story about him centering on his advocacy work on the Mississippi Gulf Coast following the BP oil spill in 2010 and on another occasion, a HuffPost editor communicated with Evans about publishing a story about his efforts in founding a Turkey Creek, Mississippi community nonprofit. *Id.*

decision of the particular issue.'" R. 19, at 8, Appx013, quoting Restatement § 145 cmt. 2(e). It reasoned that New York had a strong interest in enforcing its recently amended anti-SLAPP statute and that New York's interest in regulating its media and the conduct of its citizens outweighed any interest Mississippi had "in protecting its citizens." R. 19, at 9, Appx014.

The District Court concluded that "taken together. . . Huffpost ha[d] overcome the presumptive rule that the state law where Evans is domiciled—Mississippi— applies." R. 19, at 9, Appx014. As explained below, it flipped the proper choice of law analysis on its head and concluded that Mississippi "ha[d] minimal interest in this litigation, while New York . . . ha[d] the greatest interest in this matter." R. 19, at 9, Appx014. The District Court rejected all the Delaware decisions applying the plaintiff-domicile presumption in aggregate defamation cases with a single short footnote that simply states those cases did not present the "significantly sufficient considerations" to override the plaintiff-domicile presumption like HuffPost did here. R. 19, at 9 n. 5, Appx014.

At its core, the District Court's decision turned on the fact that New York adopted, in November 2020 (more than two years after the defamatory publications at issue), a particularly harsh anti-SLAPP statute. The District Court reasoned that law warranted overriding the plaintiff-domicile presumption adopted by Delaware courts. The District Court's singular focus on the fact that New York had an anti-

SLAPP statute, and that Mississippi did not, was error. As explained below, it was a wholly insufficient basis to conclude New York's substantive law, rather than Mississippi's, applied to Evans' claims under a Delaware choice of law analysis.

> **ii.** **Delaware law has never deemed a state's singular interest in a particular law to be a "sufficiently significant consideration" in its choice of law analysis.**

It is true that the 2020 amendment to New York's anti-SLAPP law created a higher burden of proof for plaintiffs in New York to establish liability against a party speaking on a public issue by requiring plaintiffs to show actual malice in publishing the defamatory content. NY CIV RTS § 76-a. That anti-SLAPP law (outside of its inclusion in the District Court's choice of law analysis) would have not mattered to Evans' claims here because he pled sufficient facts to show HuffPost knew of the defamatory statement's falsity or, at best, recklessly disregarded whether the statements were false. Of note, HuffPost was repeatedly told the defamatory comments about him were false and doubled down on the defamation, issuing "corrections" that repeated the defamatory statements about Evans. Amended Complaint, R. 3 at 10-15, Appx026-031.

In any event, when HuffPost claimed that New York's anti-SLAPP law warranted applying New York substantive law, Evans explained to the District Court that *no* Delaware court had ever held that a state's singular interest in an anti-SLAPP law (or any other law for that matter) had ever constituted a "sufficiently significant

consideration" to overcome the plaintiff-domicile presumption.  To the contrary, the great weight of other courts' authorities, including at least one district court in the Third Circuit, have rejected the notion that a state's anti-SLAPP law should be given *any* weight in a choice of law analysis.

In *Franklin Prescriptions, Inc. v. The New York Times Co.*, 267 F. Supp. 2d 425, 432 (E.D. Pa. 2003), for example, the defendant contended that New York's interest in protecting its media companies from defamation claims outweighed the interests of the state where the plaintiff resided.  *Id*.  In doing so, that court held:[11]

> Although New York has an interest in protecting its media defendants and providing an environment for the free exchange of ideas, Pennsylvania's interest in protecting its citizens from harm to their proprietary interests resulting from a defamatory publication, in addition to providing compensation for such injury, outweighs New York's interest on this issue.

*Id*.  In a similar case out of the Southern District of New York, a district court encountered this same argument in a case alleging multi-state defamation.  *Condit v. Dunne*, 317 F. Supp. 2d 344 (S.D.N.Y. 2004).  The defendants argued for application of New York law, arguing that New York "extends greater protection to the media and to opinions than does other jurisdictions" but the district court held that interest faltered in the face of the law of the state where the plaintiff resided, because that state had a compelling interest "in protecting its citizens from injury

---

[11] The District Court's Order made no mention of the *Franklin* case.

caused by defamatory statements." *Id*. at 355. The court held that New York's interest in protecting media companies would not overcome California's interest in protecting its citizens from defamation. *Id*.

Another federal court decision from the District of Maine explicitly rejected the concept that Maine's passage of an anti-SLAPP law "to further *its* interest in protecting [its] citizens" from meritless lawsuits outweighed another state's interests in protecting its citizens from being defamed. *Cheng v. Neumann*, 2022 WL 326785, at *5 (D. Maine Feb. 3, 2022) ("Of these underlying policy concerns, it is [the state of the plaintiff's domicile's] interest in protecting its citizens from reputational, emotional, and potentially physical harms that is the weightiest.").

Those decisions do not sit alone. These are just a few of the litany of federal courts that have rejected the District Court's reasoning that a state's anti-SLAPP law has any bearing in a court's choice of law analysis in the aggregate defamation context. *See Ranbaxy Labs., Inc. v. First Databank, Inc.*, 2014 WL 982742, at *6 (M.D. Fla. Mar. 12, 2014) (rejecting the argument that a state's restrictive anti-SLAPP statute overrode a competing state's strong interest in "preventing its companies from being the subject of libelous statements"); *Schering Corp v. First DataBank, Inc.*, 2007 WL 1176627 (N.D. Cal. Apr. 20, 2007) (state of the plaintiff's domicile had just as strong an interest in favor of using summary judgment rather than a "legislatively-constructed device to dismiss groundless actions designed to

designed to chill protected speech"); *Adelson v. Harris*, 973 F. Supp. 2d 467, 477-78 (S.D.N.Y. Sep. 30, 2013) (Nevada's interest in protecting its citizens from tortious conduct outweighed District of Columbia's interests in protecting the first amendment rights of its citizens).

The District Court's Order significantly downplayed the importance of Mississippi's interests in protecting its citizens from defamation. States have a legitimate interest in establishing "compensation of individuals for the harm inflicted on them by defamatory falsehood" and individuals have a right to "protection of private personality" consistent with a "basic concept of the essential dignity and worth of every human being." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 341 (1974). Indeed, states have always had a ultimate interest in protecting their citizens from torts like defamation. *See Kamelgard v. Macura*, 585 F.3d 334, 344 (7th Cir. 2009) ("But only New Jersey, where the plaintiff has his practice and is therefore likely to suffer tangible harm from defamation . . . even if the defamation is not published there, [it] has a *substantial* interest in protecting him from defamation; and it is therefore New Jersey law that should apply."); *Machleder v. Diaz*, 538 F. Supp. 1364, 1370 (S.D.N.Y. 1982) (recognizing that a plaintiff's state of residence "also has an important competing interest in protecting its citizens from defamation").

Simply put, the existence of New York's amended anti-SLAPP law, passed in November 2020 after the publication of the September 2018 defamatory comments

at issue, should not have been a "sufficiently significant consideration" under *Delaware's* choice of law analysis. That law did not warrant applying New York substantive law to Evans' defamation claim rather than Mississippi's.

To expound upon that point, there is simply no logic in the notion that New York has a greater interest in protecting its residents from defamation suits than Mississippi does in providing its residents with a remedy for injuries to their reputation by defamatory falsehoods. In *System Operations Inc. v. Scientific Games Development Corporation*, 555 F.2d 1131, 1139 (3d Cir. 1977), this Court explained that notion in the context of a suit involving alleged false and disparaging comments that two corporations made about a competitor's products to regulators in multiple states. In applying a New Jersey choice of law analysis, this Court explained that differences in each state's tort laws governing the product disparagement at issue should *not* be given overarching consideration. *Id*. That is because each state's tort laws on product disparagement already "represent[] a considered balance between protection of the good reputation of products from unfounded attack on the one hand and encouragement of free and robust debate on matters of public interest . . . on the other." *Id*. That is true because when states adjust "the rules relating to damages, malice, proof of falsity, and privilege, each state is able to determine for itself just where that delicate balance will be struck." *Id*. It explained that "[e]ach state's law of product disparagement thus embodies policy considerations regarding interests in

property, the right to free speech, and, probably, principles of business ethics as well." *Id*. This Court ultimately invoked Restatement § 150 in its New Jersey choice of law analysis and applied the law of New Jersey, the state where the plaintiff corporations maintained their principal places of business. *Id*. at 1139.

This Court's logic in *Scientific Games Development Corporation* is correct and on point here. The District Court should not have given New York's decision to pass an anti-SLAPP statute any greater weight than the fact that Mississippi has not adopted such a law, thereby affording defamation plaintiffs more rights. The Mississippi Legislature has entertained, but not passed, bills to create an anti-SLAPP statute in the past. For instance, Mississippi Senate Bill 2628, titled Mississippi's "Public Speech Protection Act" died in committee during Mississippi's regular 2022 session. Mississippi's silence in the face of the passage of anti-SLAPP statutes across the country deserves as much respect as New York's decision to pass its own.

Respectfully, the District Court's choice of law analysis was flawed and deviated from well-established Delaware law on the subject. This Court should reverse the District Court's order and remand the matter for further proceedings so that Evans may prosecute his defamation claim in the District of Delaware.

## CONCLUSION AND RELIEF REQUESTED

Derrick Evans asks the Court to reverse the District Court's order and remand

with instructions to proceed forward with litigation of Derrick Evans' claims.

Respectfully submitted this 13th day of November, 2023.

**WISE CARTER CHILD & CARAWAY, P.A.**

*/s Charles E. Cowan*
Charles E. Cowan, Esq.
John P. Sneed, Esq.
401 E. Capitol Street
Jackson, Mississippi 39201
(601) 968-5500
cec@wisecarter.com
jps@wisecarter.com

**SAUL EWING LLP**

James D. Taylor, Jr., Esq. (#4009)
Michelle C. Streifthau-Livizos (#6584)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19801
(302) 421-6800
james.taylor@saul.com
michelle.streifthau-livizos@saul.com

*Counsel for Appellant Derrick Evans*

# CERTIFICATE OF BAR ADMISSION

## 3d Cir. L.A.R. 28.3(d) Bar Membership Certification

Pursuant to Third Circuit Local Rule of Appellate Procedure 28.3(d), Appellant Derrick Evans hereby certifies that Charles E. Cowan and John P. Sneed of Wise Carter Child & Caraway P.A. and James D. Taylor, Jr. and Michelle C. Streifthau-Livizos of Saul Ewing LLP are members of the bar of this Court.

Dated: November 13, 2023

*/s Charles E. Cowan*_____
Charles E. Cowan, Esq.
John P. Sneed, Esq.
WISE CARTER CHILD & CARAWAY, P.A.
600 Heritage Building
401 East Capitol Street
Jackson, Mississippi 32901
(601) 968-5500
cec@wisecarter.com
jps@wisecarter.com

*Counsel for Appellant Derrick Evans*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE OF APPELLATE PROCEDURE 31.1(C)

I certify the following:

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains **8,123** words, excluding the parts of the brief exempted by Fed. R. App. P. Rule 32(f).

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type-style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally-spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies, and API V3 has been run on the file containing the electronic version of this brief and no viruses have been detected.

Dated: November 13, 2023    *s/ Charles E. Cowan*
Charles E. Cowan, Esq.
John P. Sneed, Esq.
WISE CARTER CHILD & CARAWAY, P.A.
401 East Capitol Street
Jackson, Mississippi 32901
(601) 968-5500
cec@wisecarter.com
jps@wisecarter.com

*Counsel for Appellant Derrick Evans*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that a copy of the foregoing Brief with Appendix Volume 1

was electronically filed with the Clerk of the Court using the CM/ECF system, which

will send notification of such filing to all counsel of record.

Dated: November 13, 2023

> *s/ Charles E. Cowan*_____
> Charles E. Cowan, Esq.
> John P. Sneed, Esq.
> WISE CARTER CHILD & CARAWAY, P.A.
> 401 East Capitol Street
> Jackson, Mississippi 32901
> (601) 968-5500
> cec@wisecarter.com
> jps@wisecarter.com
>
> *Counsel for Appellant Derrick Evans*

Case No. 23-2698

## DERRICK EVANS,

*Appellant,*

v.

## THEHUFFINGTONPOST.COM, INC.,

*Appellee.*

*On Appeal from an Order Entered by the United States District Court for the District of Delaware (The Honorable Gregory B. Williams)*

## APPENDIX

## VOLUME 1 (APPX001-APPX016)

**WISE CARTER CHILD & CARAWAY, P.A.**

Charles E. Cowan, Esq. (#104478)
John P. Sneed, Esq. (#7652)
401 E. Capitol Street
Jackson, Mississippi 39201
(601) 968-5500
cec@wisecarter.com
jps@wisecarter.com

**SAUL EWING LLP**

James D. Taylor, Jr., Esq. (#4009)
Michelle C. Streifthau-Livizos (#6584)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19801
(302) 421-6800
james.taylor@saul.com
michelle.streifthau-livizos@saul.com

<u>**APPENDIX**</u>

<u>**TABLE OF CONTENTS**</u>

<u>**VOLUME 1 (APPX001-APPX016)**</u>                **Appendix Page No.**

1.   Docket Report .................................................................APPX001

2.   Notice of Appeal to the U.S. Court of Appeals
     for the Third Circuit (ECF 20) ..........................................APPX005

3.   Memorandum Order (ECF 19).........................................APPX006

<u>**VOLUME 2 (APPX017-APPX284)**</u>

4.   Amended Complaint (ECF 3) ...........................................APPX017

5.   Defendant's Motion to Dismiss
     Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF 8)...................APPX071

6.   Opening Brief in Support of Defendant's
     Motion to Dismiss the Complaint (ECF 9) ......................APPX072

7.   Declaration of Joseph J. Saltarelli in Support of
     Defendant's Motion to Dismiss and Attachments (ECF 10) ............APPX098

8.   Plaintiff's Responsive Brief in Opposition to Defendant's
     Motion to Dismiss (ECF 14)............................................APPX172

9.   Declaration of Charles E. Cowan in Support of
     Plaintiff's Response in Opposition to Defendant's
     Motion to Dismiss and Attachments (ECF 14-1)..............APPX198

10.  HuffPost Reply Brief in Support of Motion
     to Dismiss (ECF 15).......................................................APPX229

11.  Declaration of Joseph J. Saltarelli in Support of
     Defendant's Reply Brief in Further Support of its
     Motion to Dismiss and Attachments (ECF 16).................APPX244

**Query**    **Reports**    **Utilities**    **Help**    **Log Out**

CLOSED,APPEAL

# U.S. District Court
# District of Delaware (Wilmington)
# CIVIL DOCKET FOR CASE #: 1:22-cv-01180-GBW

Evans v. The Huffington Post.com, Inc.
Assigned to: Judge Gregory B. Williams
Case in other court:  Third Circuit, 23-02698
Cause: 28:1332 Diversity-Libel, Assault, Slander

Date Filed: 09/08/2022
Date Terminated: 08/16/2023
Jury Demand: Plaintiff
Nature of Suit: 320 Assault Libel & Slander
Jurisdiction: Diversity

**Plaintiff**

**Derrick Evans**        represented by    **James Darlington Taylor , Jr.**
Saul Ewing Arnstein & Lehr LLP
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
(302) 421-6863
Email: James.taylor@saul.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Aubrey James Morin**
Morris James LLP
500 Delaware Ave.
Ste 1500
Wilmington, DE 19801
302-888-6941
Fax: 302-571-1750
Email: amorin@morrisjames.com
*TERMINATED: 12/14/2022*
*ATTORNEY TO BE NOTICED*

**Charles E. Cowan**
Email: cec@wisecarter.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John P. Sneed**

APPX001

Email: jps@wisecarter.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**The Huffington Post.com, Inc.**                represented by   **Jonathan A. Choa**
Potter Anderson & Corroon, LLP
1313 N. Market St., Hercules Plaza, 6th
Flr.
P.O. Box 951
Wilmington, DE 19899-0951
302-984-6189
Email: jchoa@potteranderson.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph J. Saltarelli**
Email: jsaltarelli@HuntonAK.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Silvia N. Ostrower**
Email: sostrower@HuntonAK.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/08/2022 | 1 | COMPLAINT filed with Jury Demand against The Huffington Post.com, Inc. ( Filing fee $ 402, receipt number ADEDC-3954566.) - filed by Derrick Evans. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Civil Cover Sheet) (lam) (Entered: 09/08/2022) |
| 09/08/2022 | 2 | Notice, Consent and Referral forms re: U.S. Magistrate Judge jurisdiction. (lam) (Entered: 09/08/2022) |
| 09/08/2022 | | No Summons Issued. (lam) (Entered: 09/08/2022) |
| 09/14/2022 | | Case Assigned to Judge Gregory B. Williams. Please include the initials of the Judge (GBW) after the case number on all documents filed. (rjb) (Entered: 09/14/2022) |
| 09/22/2022 | 3 | AMENDED COMPLAINT against The Huffington Post.com, Inc.- filed by Derrick Evans. (Attachments: # 1 Exhibit Comparison version)(Morin, Aubrey) (Additional attachment(s) added on 9/23/2022: # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3) (mpb). (Entered: 09/22/2022) |

APPX002

| 09/23/2022 | | CORRECTING ENTRY: Per counsel's request, attachments have been added to D.I 3 . (mpb) (Entered: 09/23/2022) |
| 09/26/2022 | 4 | SUMMONS Returned Executed by Derrick Evans.The Huffington Post.com, Inc. served on 9/26/2022, answer due 10/17/2022. (Morin, Aubrey) (Entered: 09/26/2022) |
| 10/04/2022 | 5 | STIPULATION TO EXTEND TIME for Defendant to answer, move or otherwise respond to Plaintiff's Amended Complaint to November 16, 2022 - filed by The Huffington Post.com, Inc.. (Choa, Jonathan) (Entered: 10/04/2022) |
| 10/05/2022 | | SO ORDERED, re 5 STIPULATION TO EXTEND TIME for Defendant to answer, move or otherwise respond to Plaintiff's Amended Complaint to November 16, 2022 filed by The Huffington Post.com, Inc. Signed by Judge Gregory B. Williams on 10/5/22. (ntl) (Entered: 10/05/2022) |
| 10/07/2022 | 6 | MOTION for Pro Hac Vice Appearance of Attorney Joseph J. Saltarelli and Silvia N. Ostrower - filed by The Huffington Post.com, Inc.. (Choa, Jonathan) (Entered: 10/07/2022) |
| 10/07/2022 | 7 | MOTION for Pro Hac Vice Appearance of Attorney John P. Sneed and Charles E. Cowan - filed by Derrick Evans. (Attachments: # 1 Certification of Charles E. Cowan, # 2 Certification of John P. Sneed)(Morin, Aubrey) (Entered: 10/07/2022) |
| 10/11/2022 | | SO ORDERED, re 6 MOTION for Pro Hac Vice Appearance of Attorney Joseph J. Saltarelli and Silvia N. Ostrower filed by The Huffington Post.com, Inc. Signed by Judge Gregory B. Williams on 10/11/22. (ntl) (Entered: 10/11/2022) |
| 10/12/2022 | | SO ORDERED, re 7 MOTION for Pro Hac Vice Appearance of Attorney John P. Sneed and Charles E. Cowan filed by Derrick Evans. Signed by Judge Gregory B. Williams on 10/12/2022. (etg) (Entered: 10/12/2022) |
| 10/13/2022 | | Pro Hac Vice Attorney Silvia N. Ostrower and Joseph J. Saltarelli for The Huffington Post.com, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (mpb) (Entered: 10/13/2022) |
| 11/16/2022 | 8 | MOTION to Dismiss for Failure to State a Claim - filed by The Huffington Post.com, Inc.. (Choa, Jonathan) (Entered: 11/16/2022) |
| 11/16/2022 | 9 | OPENING BRIEF in Support re 8 MOTION to Dismiss for Failure to State a Claim filed by The Huffington Post.com, Inc..Answering Brief/Response due date per Local Rules is 11/30/2022. (Choa, Jonathan) (Entered: 11/16/2022) |
| 11/16/2022 | 10 | DECLARATION re 9 Opening Brief in Support *Declaration of Joseph J. Saltarelli in Support of Defendant's Motion to Dismiss* by The Huffington Post.com, Inc.. (Attachments: # 1 Exhibit A-F)(Choa, Jonathan) (Entered: 11/16/2022) |
| 11/16/2022 | 11 | Disclosure Statement pursuant to Rule 7.1: identifying Corporate Parent BuzzFeed, Inc. for The Huffington Post.com, Inc. filed by The Huffington Post.com, Inc.. (Choa, Jonathan) (Entered: 11/16/2022) |

| 11/21/2022 | 12 | Joint STIPULATION TO EXTEND TIME Plaintiff's Answer in Opposition to Motion to Dismiss to December 14, 2022 - filed by Derrick Evans. (Morin, Aubrey) (Entered: 11/21/2022) |
|---|---|---|
| 11/22/2022 | | SO ORDERED, re 12 Joint STIPULATION TO EXTEND TIME Plaintiff's Answer in Opposition to Motion to Dismiss to December 14, 2022 filed by Derrick Evans. Signed by Judge Gregory B. Williams on 11/22/22. (ntl) (Entered: 11/22/2022) |
| 12/13/2022 | | Pro Hac Vice Attorney Charles E. Cowan and John P. Sneed for Derrick Evans added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (mpb) (Entered: 12/13/2022) |
| 12/14/2022 | 13 | NOTICE requesting Clerk to remove Aubrey J. Morin as co-counsel. Reason for request: No longer with the firm of Saul Ewing LLP. (Streifthau-Livizos, Michelle) (Entered: 12/14/2022) |
| 12/14/2022 | 14 | ANSWERING BRIEF in Opposition re 8 MOTION to Dismiss for Failure to State a Claim filed by Derrick Evans.Reply Brief due date per Local Rules is 12/21/2022. (Attachments: # 1 Declaration of Charles E. Cowan, # 2 Exhibit A&B)(Streifthau-Livizos, Michelle) (Entered: 12/14/2022) |
| 01/06/2023 | 15 | REPLY BRIEF re 8 MOTION to Dismiss for Failure to State a Claim filed by The Huffington Post.com, Inc.. (Choa, Jonathan) (Entered: 01/06/2023) |
| 01/06/2023 | 16 | DECLARATION re 15 Reply Brief *Declaration of Joseph J. Saltarelli* by The Huffington Post.com, Inc.. (Attachments: # 1 Exhibit 1-4)(Choa, Jonathan) (Entered: 01/06/2023) |
| 01/11/2023 | 17 | REQUEST for Oral Argument by Derrick Evans re 8 MOTION to Dismiss for Failure to State a Claim . (Streifthau-Livizos, Michelle) (Entered: 01/11/2023) |
| 01/12/2023 | 18 | REQUEST for Oral Argument by The Huffington Post.com, Inc. re 8 MOTION to Dismiss for Failure to State a Claim . (Choa, Jonathan) (Entered: 01/12/2023) |
| 08/16/2023 | 19 | MEMORANDUM ORDER re 8 MOTION to Dismiss filed by The Huffington Post.com, Inc. is GRANTED, ***Civil Case Terminated. Signed by Judge Gregory B. Williams on 8/16/23. (ntl) (Entered: 08/16/2023) |
| 09/14/2023 | 20 | NOTICE OF APPEAL of 19 Memorandum and Order, Terminated Case . Appeal filed by Derrick Evans. (Attachments: # 1 Exhibit A - Dkt19 - Memorandum Order) (Streifthau-Livizos, Michelle) (Entered: 09/14/2023) |
| 09/14/2023 | | APPEAL - Credit Card Payment received re 20 Notice of Appeal (Third Circuit) filed by Derrick Evans. ( Filing fee $505, receipt number ADEDC-4224059.) (Streifthau-Livizos, Michelle) (Entered: 09/14/2023) |
| 09/14/2023 | 21 | NOTICE of Docketing Record on Appeal from USCA for the Third Circuit re 20 Notice of Appeal (Third Circuit) filed by Derrick Evans. USCA Case Number 23-2698. USCA Case Manager: Laurie (DOCUMENT IS RESTRICTED AND CAN ONLY BE VIEWED BY COURT STAFF) (lr ) (Entered: 09/14/2023) |

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF DELAWARE

DERRICK EVANS,          )
                           )
          Plaintiff,    )
                           )    C. A. No. 22-1180-GBW
          v.          )
                           )
THEHUFFINGTONPOST.COM, INC.,  )
                           )
          Defendant.  )

## NOTICE OF APPEAL TO THE
## <u>U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT</u>

Notice is hereby given that Plaintiff Derrick Evans, hereby appeals to the United States

Court of Appeals for the Third Circuit the final judgment of the district court in the above-

captioned action, all other judgments, rulings, opinions, decisions, and orders merged therein,

and all other appealable prior or underlying orders, rulings, and findings, including

the Memorandum Order (D.I. 19) entered on August 16, 2023.


Dated: September 14, 2023

OF COUNSEL:

John P. Sneed, Esquire
Charles E. Cowan, Esquire
WISE CARTER
401 East Capitol Street
Jackson, MS 39201
jps@wisecarter.com
cec@wisecarter.com

**SAUL EWING LLP**

<u>/s/ Michelle C. Streifthau-Livizos</u>
James D. Taylor, Jr. (#4009)
Michelle C. Streifthau-Livizos (#6584)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, Delaware 19899
(302) 421-6800
james.taylor@saul.com
michelle.streifthau-livizos@saul.com

*Attorneys for Plaintiff Derrick Evans*

APPX005

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DERRICK EVANS,

                Plaintiff,

        v.

THEHUFFINGTONPOST.COM, INC.,

                Defendant.

C.A. No. 22-1180-GBW

## **MEMORANDUM ORDER**

Pending before the Court is Defendant TheHuffingtonPost.com, Inc.'s ("Huffpost" or "Defendant") Motion to Dismiss Plaintiff Derrick Evans' ("Evans" or "Plaintiff") Amended Complaint. D.I. 8. The Court has carefully reviewed the briefing and Amended Complaint. D.I. 3; D.I. 9; D.I. 14; D.I. 15. For the reasons stated below, Huffpost's Motion to Dismiss Evans' Amended Complaint (D.I. 8, "the Motion") is GRANTED.

## I.    BACKGROUND

On September 20, 2018, Huffpost published an article entitled "Former Student: Brett Kavanaugh's Prep School Party Scene Was a 'Free-For-All'" to a nationwide audience. D.I. 3 ¶ 25 ("the Article"). The Article was written by Ashley Feinberg, who at the time was a senior reporter employed by Huffpost. *Id.* at 1 n.1. The Article stated that Evans had helped "score" illegal narcotics that killed David Kennedy in April 1984. *Id.* ¶ 28; *see also* D.I. 3, Ex. 1. Evans contends this statement is false. *See generally* D.I. 3. Accordingly, on August 21, 2019, Evans brought a defamation suit against Huffpost and Ms. Feinberg in the Southern District of Mississippi. D.I. 3 ¶ 76; *Evans v. TheHuffingtonPost.com, Inc.*, C.A. No. 19-536-HSO-RHWR, D.I. 1 (S.D. Miss. Aug. 21, 2019) ("Mississippi Action"). On April 27, 2022, after the parties

1

completed jurisdictional discovery, the court in the Mississippi Action granted Huffpost's and Ms. Feinberg's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).   D.I. 3 ¶ 76; Mississippi Action, D.I. 58.

About a month later, Evans filed a defamation action against Huffpost and Ms. Feinberg in the Southern District of New York.  *See Evans v. The HuffingtonPost.com, Inc.*, C.A. No. 22-4257-PAE, D.I. 1 (S.D.N.Y. May 24, 2022) ("New York Action").   About a month after filing that lawsuit, Evans filed a Notice of Dismissal dismissing the New York Action without prejudice pursuant to Federal Rule of Civil Procedure Rule 41(a)(1)(A)(i).  *See* New York Action, D.I. 15. Three months later, on September 8, 2022, Evans filed the present litigation in this District.   D.I. 1.

## II.    LEGAL STANDARDS

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  FED. R. CIV. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).  But the Court will "'disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements.'"  *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).

"'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is

2

entitled to offer evidence to support the claims.'" *Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)), *aff'd*, 2018 WL 11446482 (3d Cir. Apr. 6, 2018). Rule 12(b)(6) requires the court to accept all factual allegations in the complaint as true and view them in the light most favorable to plaintiff. *Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 351 (3d Cir. 2020). The court may consider matters of public record and documents attached to, "integral to[,] or explicitly relied upon in" the complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (cleaned up); *see also Spizzirri v. Zyla Life Scis.*, 802 F. App'x 738, 739 (3d Cir. 2020) (same). "A motion to dismiss 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Burlington Coat Factory*, 114 F.3d at 1420).

## III.   DISCUSSION

Evans asserts a claim for defamation. D.I. 3 ¶¶ 77-84. Huffpost argues Evans' claim is time barred by the statute of limitations. *See* D.I. 9; D.I. 15. The crux of the parties' dispute is whether Mississippi's or New York's statute of limitations applies.

The parties agree that, where jurisdiction is based on diversity of citizenship, as is the case here, federal courts must apply the choice-of-law rules of the forum state, here Delaware. D.I. 9 at 3-4 (citations omitted); D.I. 14 at 5 (citation omitted); *see also Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 621 (3d Cir. 2009). As such, the Court must also apply Delaware's borrowing statute, "which provides that when a non–Delaware resident files suit in Delaware based on a cause of action arising outside of Delaware, the Court must apply the shorter of Delaware's and the other

3

state's statute of limitations."[1]  *Johnson v. Warner Bros. Ent.*, C.A. No. 16-185-LPS, 2017 WL 588714, at *3 (D. Del. Feb. 14, 2017).  The Delaware borrowing statute provides, in relevant part:

> Where a cause of action arises outside of this state, an action cannot be brought in a court of this State to enforce such a cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action.

10 Del. C. § 8121.

"To determine where a cause of action arises for purposes of the borrowing statute, Delaware's choice of law rules ask which state has the most significant relationship to the claims and to the parties." *Johnson*, 2017 WL 588714, at *3; *see also Triestman v. Slate Grp., LLC*, C.A. No. 19-890-MN, 2020 WL 1450562, at *2 (D. Del. Mar. 25, 2020) (same).  "While many factors can be included in this analysis, in a defamation case there is a presumption that 'the local law of the state of the plaintiff's domicile applies unless, with respect to the particular issue, one of the other states has a more significant relationship to the occurrence and the parties.'" *Johnson*, 2017 WL 588714, at *3 (quoting *Stephen G. Perlman, Rearden LLC v. Vox Media, Inc.*, C.A. No. 10046-VCP, 2015 WL 5724838, at *11 (Del. Ch. Sept. 30, 2015)); *see also* Restatement (Second) of Conflict of Laws §§ 149, 150 (1971) (the "Restatement").[2]  "This presumption is based on the fact

---

[1] There is no dispute that Evans is a non-Delaware resident.

[2] Delaware courts rely on the Restatement when conducting a choice of law analysis.  *See, e.g.*, *Smith v. Delaware State Univ.*, 47 A.3d 472, 480 (Del. 2012); *Avenatti v. Fox News Network, LLC*, C.A. No. 20-01541-SB, 2021 WL 3603035, at *2 (D. Del. Aug. 13, 2021), *aff'd*, 41 F.4th 125 (3d Cir. 2022).  Section 149 of the Restatement states:

> In an action for defamation, the local law of the state where the publication occurs determines the rights and liabilities of the parties, except as stated in § 150, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement § 149.

APPX009

that defamation produces 'a special kind of injury that has its principal effect among one's friends, acquaintances, neighbors and business associates in the place of one's residence.'" *Triestman*, 2020 WL 1450562, at \*2 (quoting *Aoki v. Benihana, Inc.*, 839 F. Supp. 2d 759, 765 (D. Del. 2012)).

Once the presumption has been established, the Court must analyze the general tort principles outlined in § 145 of the Restatement, and then consider the competing state interests under the principles outlined in § 6 of the Restatement. In other words, the presumptive rule can be overcome by showing that another state has a more significant relationship to the parties and the claims under §§ 6 and 145 of the Restatement.

Here, the parties dispute whether Evans is domiciled in Mississippi. Evans argues that he was domiciled in Mississippi at the time the Article was published and, thus, Mississippi has the most significant relationship to the parties and claims. D.I. 14 at 7-15. Huffpost argues that the presumption does not apply to this case because "Evans admit[ed] he resides in two states and suffered reputational harm, if at all, in multiple states." D.I. 15 at 2. To support its argument, Huffpost relies on extrinsic evidence that is not included in Evans' Amended Complaint. For example, Huffpost relies on interrogatory responses and deposition testimony from the Mississippi Action. *See, e.g.*, D.I. 9 at 8-10 (citing D.I. 10, Ex. D (Evans' Depo)); D.I. 15 at 2-4 (citing D.I. 16, Ex. 1 (Evans' Depo); D.I. 14-2, Ex. B (Evans' Response to Interrogatories)). But this reliance is improper. "'To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.'" *Skolas*, 770 F.3d at 249 (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). Interrogatory responses and deposition testimony from the

---

For multistate defamation cases dealing with online publications, § 150 of the Restatement applies. *Id.* § 150. Here, the Article was published on Huffpost's website; accordingly, § 150 governs.

Mississippi Action are documents outside of the pleadings. *See, e.g.*, *Intercept Pharms., Inc. v. Fiorucci*, C.A. No. 14-1313-RGA, 2017 WL 253966, at *2 (D. Del. Jan. 20, 2017) (refusing to consider interrogatory responses for the purposes of the Rule 12(b)(6) motion because they constituted "extraneous information").[3]  As such, the Court will not rely on this evidence for the purposes of this Motion.[4]

Evans' Amended Complaint states that he is a resident and citizen of Mississippi. D.I. 3 ¶ 1.  Because Rule 12(b)(6) requires the Court to accept all factual allegations in the Amended Complaint as true and view them in the light most favorable to Evans, the Court concludes, for the purposes of this Motion, that Evans is domiciled in Mississippi. *See AbbVie Inc.*, 976 F.3d at 351.

The Court's determination that Evans is domiciled in Mississippi does not end the Court's inquiry.  Although Evans is entitled to a presumption that Mississippi law applies, the Court must consider the four factors outlined in § 145 of the Restatement, which are:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

Restatement § 145(2)(a)-(d).

---

[3] The Third Circuit has held that, "[u]nder the Rule 12(b)(6) standard, courts also may consider deposition testimony, but only for the existence of the testimony—not for the truth of the facts asserted therein." *Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*, 742 F. App'x 628, 631-32 (3d Cir. 2018) (citations omitted).  Here, Huffpost improperly relies on Evans' deposition testimony from the Mississippi Action in its briefs for the truth of the facts asserted therein. *See, e.g.*, D.I. 9 at 8-10 (citing D.I. 10, Ex. D (Evans' Depo)); D.I. 15 at 2-4 (citing D.I. 16, Ex. 1 (Evans' Depo)).

[4] A court that considers documents outside of the pleadings may convert the motion to dismiss to a motion for summary judgment. *Burlington Coat Factory*, 114 F.3d at 1426.  The Court declines to convert the Motion into a motion for summary judgment at this stage of the litigation.  Thus, the Court declines to rely on the extrinsic evidence when resolving this Motion.

APPX011

The first factor weighs slightly in favor of applying Mississippi law, as Evans is domiciled in Mississippi. *See* D.I. 14 at 7; *see also* D.I. 3 ¶ 1. While Evans states that his injury is limited to Mississippi, *see, e.g.*, D.I. 14 at 7, he also alleges in his Amended Complaint that the Article was published online "to a nationwide audience on multiple occasions" and, thus, his injury is not limited to Mississippi. D.I. 3 at 1. In multistate defamation cases, "the place of injury will not play an important role in the selection of the state of the applicable law" when the "injury has occurred in two or more states." Restatement § 145 cmt. 2(e).

The second factor weighs slightly in favor of applying New York law. The decision to publish the Article was likely made in New York because Huffpost's headquarters is located in New York. D.I. 3 ¶ 2. That said, the place where the conduct occurred is of "less significance" in cases of multistate defamation. Restatement § 145 cmt. 2(e).

The third factor is neutral. As discussed above, Evans is a resident and citizen of Mississippi. Huffpost is incorporated in Delaware and its headquarters and principal place of business are located in New York. D.I. 3 ¶ 2.

The fourth factor carries no weight. It is unclear to the Court, based on the allegations contained in the Amended Complaint and exhibits attached thereto, where the parties' relationship is centered and/or whether the parties have any relationship. D.I. 3; D.I. 9 at 12; D.I. 14 at 18; D.I. 15 at 7.

Finally, the Court must consider New York's and Mississippi's competing interests under the factors outlined in § 6 of the Restatement:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,

            (f) certainty, predictability and uniformity of result, and

            (g) ease in the determination and application of the law to be applied.

Restatement § 6(2)(a)-(g). "In applying the principles of § 6 to determine the state of most significant relationship, the forum should give consideration to the relevant policies of all potentially interested states and the relevant interests of those states in the decision of the particular issue." *Id.* § 145 cmt. 2(e).

New York has a strong interest in enforcing its anti-strategic litigation against public participation ("anti-SLAPP") statute. N.Y. Civ. Rights Law § 76-a. On November 10, 2020, New York expanded its First Amendment protections under its anti-SLAPP statute. New York's anti-SLAPP statute now protects actions based on "any communication in a place open to the public or a public forum in connection with an issue of public interest," or "any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition." *Id.* §§ 76–a(1)(a)(1)-(2); *see also Palin v. New York Times Co.*, 510 F. Supp. 3d 21, 24-26 (S.D.N.Y. 2020). The anti-SLAPP statute directs that the term "public interest" "shall be construed broadly and shall mean any subject other than a purely private matter." N.Y. Civ. Rights Law § 76-a(1)(d). "[T]he amendments create an affirmative cause of action for certain defendants to recover attorneys' fees and other damages from plaintiffs in specified circumstances." *Palin*, 510 F. Supp. 3d at 25 (citing N.Y. Civ. Rights Law § 70-a). The 2020 amendments were meant "'to provide the utmost protection for the free exercise or speech, petition, and association rights, particularly where such rights are exercised in a public forum with respect to issues of public concern.'" *Id.* at 27 (quoting Sponsor Mem. of Sen. Hoylman (July 22, 2020), https://www.nysenate.gov/legislation/bills/2019/s52). It is evident that New York has strong policy interests in regulating its media and the conduct of its citizens.

APPX013

On the other hand, Mississippi does not have an anti-SLAPP statute. *See Durham v. Ankura Consulting Grp., LLC*, C.A. No. 20-112-KS-MTP, 2022 WL 20007542, at \*6 n.14 (S.D. Miss. Dec. 12, 2022); *see also Reporters Committee For Freedom of the Press*, https://www.rcfp.org/anti-slapp-guide/mississippi/ (last visited Aug. 14, 2023).

On balance, the competing interests of the states and the interests of interstate comity favor applying New York law. "Whereas [New York] would appear to object strongly to the absence of a robust anti-SLAPP regime, [Mississippi's] interests would be less harmed by the use of [New York] law." *See Sarver v. Chartier*, 813 F.3d 891, 899-900 (9th Cir. 2016). The Court recognizes that Mississippi has an interest in protecting its citizens, but this interest is outweighed by New York's interest in regulating its media.

Taken together, the Court concludes that Huffpost has overcome the presumptive rule that the state law where Evans is domiciled—Mississippi—applies. Apart from Evans residing in Mississippi, his home state has minimal interest in this ligation, while New York, for the reasons discussed above, has the greatest interest in this matter. For the foregoing reasons, the Court concludes that New York has the most significant relationship to this litigation.[5]

Under Delaware's borrowing statute, the Court must apply the shorter of the Delaware statute of limitations and the statute of limitations of the place where Evans' cause of action accrued, which for the reasons discussed above is New York. For defamation cases, Delaware's statute of limitations is two years, Del. C. Tit. 10 § 8119; *Triestman*, 2020 WL 1450562, at \*2, while New York's statute of limitations is one-year, N.Y. C.P.L.R. § 215(3). Accordingly, the

---

[5] Unlike the several cases cited in Evans' Answering Brief where Courts have applied the law of a state where the plaintiff domiciles at the time of the publication, D.I. 14 at 10-15, here, there are significantly sufficient considerations under Restatement §§ 6 and 145 to overcome the presumptive rule that were not present in the cases cited by Evans.

Court must apply the shorter statutes of limitations, which is New York. The Article was published on September 20, 2018, D.I. 3 ¶ 25, and this litigation was filed nearly four years later, D.I. 1. Under New York's one-year statute of limitations for defamation cases, this litigation is time-barred.

Next, the Court must determine whether New York's savings statute, N.Y. C.P.L.R. § 205(a), applies. *See Frombach v. Gilbert Assocs., Inc.*, 236 A.2d 363, 366 (Del. 1967) ("The theory is that the borrowed statute is accepted with all its accoutrements.") (citations omitted). New York's "savings statute does not apply to claims that were dismissed for lack of personal jurisdiction." *Wang v. Palmisano*, 157 F. Supp. 3d 306, 325 (S.D.N.Y. 2016); *see also* N.Y. C.P.L.R. § 205(a); *Ezra v. Weitz & Luxembourg, P.C.*, C.A. No. 18-6802-AKH, 2018 WL 10497896, at *2 (S.D.N.Y. Nov. 28, 2018), *aff'd*, 794 F. App'x 27 (2d Cir. 2019). Specifically, New York's savings statute states:

> *If an action is timely commenced and is terminated in any other manner than by a* voluntary discontinuance, *a failure to obtain personal jurisdiction over the defendant*, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff, or, if the plaintiff dies, and the cause of action survives, his or her executor or administrator, may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period. Where a dismissal is one for neglect to prosecute the action made pursuant to rule thirty-two hundred sixteen of this chapter or otherwise, the judge shall set forth on the record the specific conduct constituting the neglect, which conduct shall demonstrate a general pattern of delay in proceeding with the litigation.

N.Y. C.P.L.R. § 205(a) (emphasis added).

Because the Mississippi Action was dismissed for lack of personal jurisdiction, Evans cannot benefit from the six-month extension period afforded by New York's savings statute. Therefore, Evans' claims are time barred, and Huffpost's Motion (D.I. 8) is granted.

10

## IV.    CONCLUSION

For the foregoing reasons, HuffPost's Motion (D.I. 8) is granted, and Evans' Amended Complaint (D.I. 3) is dismissed with prejudice.

* * *

WHEREFORE, at Wilmington this 16th day of August, 2023, **IT IS HEREBY ORDERED** that HuffPost's Motion to Dismiss Evans' Amended Complaint (D.I. 8) is **GRANTED** and Evans' Amended Complaint (D.I. 3) is **DISMISSED WITH PREJUDICE**.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

APPX016