# United States Court of Appeals

*for the*

# Third Circuit

Case No. 23-2698

DERRICK EVANS,

*Appellant,*

– v. –

THEHUFFINGTONPOST.COM, INC.,

*Appellee.*

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE IN CASE NO. 1-22-CV-01180
HONORABLE GREGORY B. WILLIAMS, DISTRICT JUDGE

## BRIEF FOR DEFENDANT-APPELLEE

JOSEPH J. SALTARELLI
SILVIA N. OSTROWER
HUNTON ANDREWS KURTH LLP
200 Park Avenue, 52nd Floor
New York, New York 10166
(212) 309-1000

– and –

JONATHAN A. CHOA
POTTER ANDERSON & CORROON LLP
1313 North Market Street
Hercules Plaza, 6th Floor
Wilmington, Delaware 19801
(302) 984-6000

*Attorneys for Appellee*

CP COUNSEL PRESS    (800) 4-APPEAL • (326023)

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, Appellee TheHuffingtonPost.com, Inc. discloses that its parent corporation is BuzzFeed, Inc., a publicly held company that owns 10% or more of TheHuffingtonPost.com, Inc.'s stock; NBCUniversal Media LLC is a publicly held company that owns 10% or more of BuzzFeed, Inc.'s stock; NBCUniversal Media LLC is a wholly owned indirect subsidiary of Comcast Corporation, which is publicly traded; and no publicly held corporation not a party to the proceeding has as a financial interest in the outcome of this litigation.

Dated: December 13, 2023

*/s/ Joseph J. Saltarelli*
Joseph J. Saltarelli
HUNTON ANDREWS KURTH LLP
200 Park Avenue
52nd Floor
New York, NY 10166
(212) 309-1000
jsaltarelli@HuntonAK.com

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ............................................................................ 1

COUNTER-STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ........ 3

COUNTER-STATEMENT OF RELATED CASES AND PROCEEDINGS .......... 3

COUNTER-STATEMENT OF THE CASE ............................................... 4

SUMMARY OF THE ARGUMENT ....................................................... 5

ARGUMENT ................................................................................ 6

I.      Standard of Review ............................................................. 6

II.     The District Court's Order Dismissing the Action Should Be Affirmed. ........ 6

   A.   After applying the factors set forth in the Restatement (Second) of
        Conflict of Laws, the District Court correctly determined that New
        York law governs Evans' defamation claim. ................................. 8

   B.   The District Court correctly determined that any presumption that the
        law of Evans' alleged domicile governs was overcome because New
        York has the most significant relationship to Evans' claim. ............. 15

   C.   Evans disregards New York's long-standing policy to protect
        freedom of the press, and gives undue weight to the presumption in
        Section 150 of the Restatement. ......................................... 22

   D.   The Delaware decisions Evans relies upon are distinguishable and
        their reasoning is inapposite because none involved a New York-
        based media company defendant or the interests New York has in
        regulating media companies that publish in the State. ................... 25

   E.   The District Court correctly concluded, upon applying New York
        law, that the action was time-barred. ................................... 30

CONCLUSION ............................................................................. 31

CERTIFICATE OF BAR ADMISSION .................................................. 32

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE OF APPELLATE
PROCEDURE 31.1(C) .................................................................. 33

CERTIFICATE OF FILING AND SERVICE .......................................... 35

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Adelson v. Harris*,
   973 F. Supp. 2d 467 (S.D.N.Y. 2013) ...............................................................28

*Aoki v. Benihana, Inc.*,
   839 F. Supp. 2d 759 (D. Del. 2012), (ii)......................................................26, 27

*Avenatti v. Fox News Network, LLC*,
   2021 WL 3603035 (D. Del. Aug. 13, 2021), (v) ...............................................26

*BP Chem. Ltd. v. Formosa Chem. & Fibre Corp.*,
   229 F.3d 254 (3d Cir. 2000) ...............................................................................16

*Calcaño Pallano v. AES Corp.*,
   2011 WL 2803365 (Del. Super. Ct. July 15, 2011)............................................7

*Cheng v. Neumann*,
   2022 WL 326785 (D. Me. Feb. 3, 2022) .......................................................27, 28

*Condit v. Dunne*,
   317 F. Supp. 2d 344 (S.D.N.Y. 2004) ..........................................................20, 29

*Davis v. Costa-Gavras*,
   580 F. Supp. 1082 (S.D.N.Y. 1984) .................................................18, 19, 21, 28

*Dawe v. Corrections USA*,
   2009 WL 1420969 (E.D. Cal. May 20, 2009) ..............................................23, 24

*Deaton v. Napoli*,
   2019 WL 156930 (E.D.N.Y. Jan. 10, 2019) .......................................................19

*DeIuliis v. Engel*,
   2021 WL 4443145 (S.D.N.Y. Sept. 27, 2021) ...................................................19

*Delargy v. Hartford Accident & Indem. Co.*,
   1986 WL 11562 (Del. Super. Oct. 8, 1986) .......................................................30

*Evans v. TheHuffingtonPost.com, Inc.*,
   2022 WL 21320601 (S.D. Miss. Apr. 27, 2022) ..................................................1

*Ezra v. Weitz & Luzembourg, P.C.*,
   2018 WL 10497896 (S.D.N.Y. Nov. 28, 2018)....................................................30

*Franklin Prescriptions, Inc. v. N.Y. Times, Co.*,
   267 F. Supp. 2d 425 (E.D. Pa. 2003) ...................................................29

*Frombach v. Gilbert Assocs., Inc.*,
   236 A.2d 363 (Del. 1967) ...............................................................30

*Furman v. Cirrito*,
   828 F.2d 898 (2d Cir. 1987) ............................................................14

*Immuno AG. v. Moor-Jankowski*,
   77 N.Y.2d 235 (N.Y. 1991) ...............................................................17

*Jacob v. Lorenz*,
   626 F. Supp. 3d 672 (S.D.N.Y. 2022) ............................................19

*Johnson v. TheHuffingtonPost.com, Inc.*,
   21 F.4th 314 (5th Cir. 2021) ...............................................................1

*Johnson v. Warner Bros. Ent., Inc.*,
   2017 WL 588714 (D. Del. Feb. 14, 2017)..............................7, 8, 9, 26

*Kamelgard v. Macura*,
   585 F.3d 334 (7th Cir. 2009) .....................................................29, 30

*Kinsey v. N.Y. Times Co.*,
   991 F.3d 171 (2d Cir. 2021) .................................................*passim*

*Lafferty v. St. Riel*,
   495 F.3d 72 (3d Cir. 2007) ...............................................................7

*Machleder v. Diaz*,
   538 F. Supp. 1364 (S.D.N.Y. 1982) ...............................................30

*McClain v. Camouflage Assoc.*,
   1994 WL 570874 (E.D. Pa. Oct. 18, 1994) .......................................20

*McElroy v. FirstEnergy Corp.*,
   824 F. App'x. 97 (3d Cir. 2020) .........................................................6

*Mississippi Band of Choctaw Indians v. Holyfield*,
   490 U.S. 30 (1989) ..............................................................................................11

*Ordonez v. Yost*,
   289 F. App'x 553 (3d Cir. 2008) ......................................................................13

*Palin v. New York Times Co.*,
   510 F. Supp. 3d 21 (S.D.N.Y. 2020) ................................................................22

*Prince v. Intercept*,
   634 F. Supp. 3d 114 (S.D.N.Y. 2022) ..............................................................18

*Ranbaxy Lab'y, Inc. v. First Databank, Inc.*,
   2014 WL 982742 (M.D. Fla. Mar. 12, 2014) ..............................................28, 29

*Robeson Indus. Corp. v. Hartford Acc. & Indem. Co.*,
   178 F.3d 160 (3d Cir. 1999) .................................................................................6

*Sarver v. Chartier*,
   813 F.3d 891 (9th Cir. 2016) ........................................................................11, 23

*Schering Corp. v. First Databank Inc.*,
   2007 WL 1176627 (N.D. Cal. Apr. 20, 2007) .............................................28, 29

*Schmidt v. The Washington Newspaper Publ'g Co.*,
   2019 WL 4785560 (Del. Super. Ct. Sept. 30, 2019), and (vi)...........................26

*Smith v. Delaware State Univ.*,
   47 A.3d 472 (Del. 2012) .......................................................................................9

*Stephen G. Perlman, Rearden LLC v. Vox Media, Inc.*,
   2015 WL 5724838 (Del. Ch. Sept. 30, 2015), (iii)...........................................26

*Stephens v. Clash*,
   796 F.3d 281 (3d Cir. 2015) ................................................................................6

*TermoRio S.A. E.S.P. v. Electranta S.P.*,
   487 F.3d 928 (D.C. Cir. 2007)...........................................................................13

*Triestman v. Slate Grp., LLC*,
   2020 WL 1450562 (D. Del. Mar. 25, 2020) ...................................................8, 26

v

*Wydallis v. U.S. Fidelity & Guar. Co.*,
   63 N.Y.2d 872 (N.Y. 1984) ...............................................................................31

**Rules**

3d Cir. L.A.R. 28.1(a)(2) ........................................................................................3

Fed. R. Civ. P. 12(b)(1).........................................................................................14

Fed. R. Civ. P. 12(b)(6).............................................................................6, 13, 14

Fed. R. Civ. P. 41(a)(1).............................................................................................2

Fed. R. Civ. P. 56..................................................................................................14

N.Y. CPLR § 205(a) ..............................................................................................30

**Statutes**

Del. Code tit. 10 § 8119 ...........................................................................................7

Del. Code tit. 10 § 8121 ...........................................................................................7

**Other Authorities**

5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. §
   1366 (3d ed.) ....................................................................................................14

Restatement (Second) of Conflict of Laws (1971) § 6 ....................................*passim*

Restatement (Second) of Conflict of Laws (1971) § 145 ................................*passim*

Restatement (Second) of Conflict of Laws (1971) § 149 .........................................8

Restatement (Second) of Conflict of Laws (1971) § 150 ................................8, 9, 16

Appellee, TheHuffingtonPost.com, Inc. ("HuffPost"), respectfully submits this Answering Brief in opposition to the appeal filed by Appellant, Derrick Evans ("Evans"). Evans appeals from an August 16, 2023 Memorandum Order ("Order") of the District Court (Gregory B. Williams, J.), which dismissed his action on the ground that it is time-barred under New York law. The Order should be affirmed.

## **INTRODUCTION**

This suit represents Evans' third bite at the same apple.

Evans first filed his claim of defamation in August 2019, in United States District Court for the Southern District of Mississippi. Evans sued HuffPost and then-HuffPost journalist, Ashley Feinberg, in Mississippi, even though HuffPost is headquartered in New York, Feinberg lives there, and the article in which Evans was allegedly libeled had been researched, written, edited, and published in New York and its contents had nothing whatever to do with the state of Mississippi. Following extensive jurisdictional discovery, Evans' action was dismissed for lack of personal jurisdiction. *Evans v. TheHuffingtonPost.com, Inc*., 2022 WL 21320601 (S.D. Miss. Apr. 27, 2022).[1]

---

[1] The Fifth Circuit's decision in *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314 (5th Cir. 2021), *en banc denied*, 32 F.4th 488 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 485 (2022), discussed at length in the Brief of Appellant Derrick Evans (ECF 17) ("Br."), and involving a dismissal for lack of personal jurisdiction, is irrelevant to and has no bearing on this appeal.

Evans fails to advise the Court that, after his suit was dismissed, he filed an identical complaint in federal court in New York, effectively admitting the centrality of that State to his claim. Evans' second suit, however, was filed more than three and one-half years after publication of the article at issue, well beyond the one-year statute of limitations for defamation claims under New York law. Evans does not dispute that if New York law governs, his claim is time-barred.

Evans presumably filed his second action believing he could take advantage of New York's savings statute, which provides that where an action is timely commenced, but dismissed on certain specified procedural grounds, it may be re-filed within six months. When, however, HuffPost's counsel pointed out that New York's savings statute contains an exception for prior dismissals resulting from "a failure to obtain personal jurisdiction over the defendant" – thereby rendering the New York action time-barred – Evans abruptly filed a voluntary dismissal of his New York suit pursuant to Fed. R. Civ. P. 41(a)(1). This Delaware action, Evans' third, was commenced 85 days later.

In the District Court, Evans asserted that his action was governed by Mississippi law and timely. The thrust of Evans's argument on appeal, as it was before the District Court, is that his purported residence in Mississippi trumps all other factors the District Court was required to consider in determining whether New York or Mississippi law governs. But the District Court correctly determined

that the presumption Evans relies upon – favoring in the first instance the law of the plaintiff's domicile in cases of alleged multistate defamation – is overcome in this case because New York has the most significant relationship to the claim and the parties.

Similar to numerous courts around the country, the District Court properly recognized the significant policy interests the State of New York has, as the media and newsgathering capital of the United States, in regulating the conduct of, and affording its robust free press protections to, journalists and news media companies publishing in the State. Those policy interests, the District Court correctly held, are sufficiently strong to overcome any presumption that the law of Mississippi should govern based solely upon Evans' alleged residence there.

## COUNTER-STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.　　Was the District Court correct in holding that New York law governs Evans' defamation claim because New York, rather than Mississippi, has the most significant relationship to the claim and the parties?

## COUNTER-STATEMENT OF RELATED CASES AND PROCEEDINGS

This proceeding has not been before this Court previously. HuffPost is aware of two related cases or proceedings responsive to Third Circuit Local Appellate Rule 28.1(a)(2), as described below. Both cases are completed.

1. *Evans v. The Huffington Post.Com, Inc., et al.*, Case No. 1:19-cv-00536-HSO-RHWR (S.D. Miss. filed Aug. 21, 2019).

2. *Evans v. The Huffington Post.Com, Inc., et al.*, Case No. 1:22-cv-04257-PAE (S.D.N.Y. filed May 24, 2022).

## COUNTER-STATEMENT OF THE CASE

HuffPost is a Delaware corporation with its principal place of business in New York City. From its business and editorial headquarters in New York, HuffPost operates a global online news and media platform accessible at www.HuffPost.com. (R. 3, ¶¶ 3-4, Appx020.) The site covers local and international news, politics, business, entertainment, the environment, technology, lifestyle, culture, comedy, healthy living, and women's interests stories.

Evans alleges he was defamed in an article published on www.HuffPost.com on September 20, 2018, entitled "Former Student: Brett Kavanaugh's Prep School Party Scene Was 'Free-For-All'" ("Article"). (R. 3, ¶¶ 25, 30, Appx023-024; R. 3, Exs. 1-3, Appx052-070; *see also* R. 19, at 1-2, Appx006-007.) The focus of the Article, written in New York by then-HuffPost journalist Ashley Feinberg, was the early-1980's "party" culture at Georgetown Preparatory School, located in North Bethesda, Maryland, and then attended by now-Supreme Court Justice Brett Kavanaugh. The Article, a copy of which is an exhibit to the Amended Complaint, had nothing to do with, and never mentioned Mississippi. It was not based on

Mississippi sources, and referred to activities that took place in Maryland and at the Kennedy family compound in Florida. The Article made no reference to Evans' state of residence.

## SUMMARY OF THE ARGUMENT

After weighing all relevant factors in the Restatement (Second) of Conflict of Laws, as required by Delaware law, the District Court concluded correctly that New York law governs Evans' defamation claim. Because the action is time-barred under New York law, the District Court dismissed the Amended Complaint with prejudice.

While Evans was entitled to an initial presumption that the law of the state of his purported domicile governs his multistate defamation claim, the Court properly held that the presumption is overcome in this case. Other than Evans' alleged residence in Mississippi, that state has no discernible interest in Evans' claim. Conversely, New York has a significant interest in having its law applied to that claim.

HuffPost is a media outlet with its principal place of business in New York, and the Article was written by a New York journalist in New York and published from HuffPost headquarters in New York. New York has a long-standing policy affording robust protections to New York media companies and a great interest in

regulating those companies, as reflected in its Constitution and statutes (including its anti-SLAPP regime), and longstanding state and federal judicial precedent.

In contrast, none of the Delaware decisions relied on by Evans required the Court to balance those long-recognized interests of the State of New York against the interests of the state of plaintiff's residence. That the precedents Evans cites applied the presumption in favor of the law of the state of plaintiff's residence is, therefore, of no significance and all of the decisions are accordingly inapposite.

For those reasons, the District Court's Order should be affirmed.

## ARGUMENT

### I. Standard of Review

This Court reviews district court orders dismissing complaints pursuant to Rule 12(b)(6) under a *de novo* standard of review. *McElroy v. FirstEnergy Corp.*, 824 F. App'x. 97, 98-99 (3d Cir. 2020) (citations omitted). "Choice-of-law is a question of law which this court reviews *de novo.*" *Robeson Indus. Corp. v. Hartford Acc. & Indem. Co.*, 178 F.3d 160, 164-65 (3d Cir. 1999).

### II. The District Court's Order Dismissing the Action Should Be Affirmed.

Because this is a diversity action, the Court must apply Delaware law – including Delaware's statute of limitations provisions and choice of law rules – to determine whether Evans' action is time-barred. *Stephens v. Clash*, 796 F.3d 281, 289 (3d Cir. 2015) ("[A] federal court must apply the substantive laws of its forum

state in diversity actions, and these include state statutes of limitations.") (quoting *Lafferty v. St. Riel,* 495 F.3d 72, 76 (3d Cir. 2007)); *Johnson v. Warner Bros. Ent., Inc.*, 2017 WL 588714, at *3 (D. Del. Feb. 14, 2017) ("When federal jurisdiction is based upon diversity of citizenship, the Court must apply the forum state's choice of law rules.").

In Delaware, the limitations period for defamation claims is two years. Del. Code tit. 10 § 8119. Insofar as the Article was published on September 20, 2018, Evans' action is time-barred under Delaware's two-year statute of limitations. Under Delaware's borrowing statute, however, if a cause of action arose outside of Delaware – as is the case here – the court must apply the shorter of Delaware's limitations period or the statute of limitations of the state where the cause of action arose:

> Where a cause of action arises outside of this State, an action can not be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action.

Del. Code tit. 10 § 8121.

The purpose of Delaware's borrowing statute "is to prevent a non-resident from bringing a foreign cause of action, which is precluded by that jurisdiction's statute of limitations, in Delaware where the statute of limitations period is longer." *Calcaño Pallano v. AES Corp.*, 2011 WL 2803365, at *3 (Del. Super. Ct.

July 15, 2011). In other words, the borrowing statute is meant to prevent forum

shopping by a plaintiff whose cause of action arose outside of Delaware. There is

no better example of such "forum shopping" than this lawsuit, in which a complete

stranger to Delaware has filed suit here attempting to revive an action dismissed in

Mississippi for lack of personal jurisdiction, and then re-filed in New York but

voluntarily dismissed because it was time-barred under New York law.

**A.    After applying the factors set forth in the Restatement (Second) of Conflict of Laws, the District Court correctly determined that New York law governs Evans' defamation claim.**

"To determine where a cause of action arises for purposes of the borrowing

statute, Delaware's choice of law rules ask which state has the most significant

relationship to the claims and to the parties." *Johnson*, 2017 WL 588714, at *3; *see*

*also Triestman v. Slate Grp., LLC*, 2020 WL 1450562, at *2 (D. Del. Mar. 25,

2020). The "most significant relationship" test is adopted from the Restatement

(Second) of Conflict of Laws (1971) ("Restatement"). In defamation cases, Section

149 of the Restatement acknowledges that, as a general rule, the law of the place of

publication applies:

> In an action for defamation, the local law of the state where the publication occurs determines the rights and liabilities of the parties, except as stated in § 150, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement § 149; *see also Smith v. Delaware State Univ.*, 47 A.3d 472, 480 (Del. 2012) (applying New York statute of limitations because publication occurred in New York).

In the case of online publications reaching multiple states, the applicable law is "the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement § 150(1). The comments to Section 150 make clear what Evans either minimizes or ignores outright in his discussion of that section: whether the law of a state other than the state of the plaintiff's domicile "has a more significant relationship to the occurrence and the parties" is to be "determined in the light of the choice-of-law principles stated in § 6." *Id.* § 150, cmt. b. This is precisely the analysis the District Court engaged in.

Although in multistate defamation cases the Restatement creates a presumption that the state with the most significant relationship is the one where plaintiff was "domiciled" at the time of publication, *id.* § 150(2), that presumption can be overcome by a showing that another state has a more significant relationship to the occurrence and the parties, under the principles stated in Section 6 of the Restatement. *See id.* § 150(1); *see also Johnson*, 2017 WL 588714, at *3 ("While many factors can be included in this analysis, in a defamation case there is a presumption that the local law of the state of the plaintiff's domicile applies

unless, with respect to the particular issue, one of the other states has a more

significant relationship to the occurrence and the parties.") (quotation omitted);

*accord Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 177 (2d Cir. 2021).

The principles in Section 6 of the Restatement, which courts consider when

assessing which state has the most significant relationship, include:

> (a)    the needs of the interstate and international systems;
> (b)    the relevant policies of the forum;
> (c)    the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;
> (d)    the protection of justified expectations;
> (e)    the basic policies underlying the particular field of law;
> (f)    certainty, predictability and uniformity of result; and
> (g)    ease in the determination and application of the law to be applied.

*Id.* § 6(2).

When applying the above factors, the court should take into account the

following contacts, pursuant to Section 145(2) of the Restatement:

> (a)    The place where the injury occurred;
> (b)    The place where the conduct causing the injury occurred;
> (c)    The domicil, residence, nationality, place of incorporation, and place of business of the parties; and
> (d)    The place where the relationship, if any, between the parties is centered.

*Id.* § 145(2).

Here, the District Court properly evaluated these factors and determined that

New York law governs Evans' claim.

First, the District Court concluded that the first factor under Section 145(2) weighed only "slightly in favor" of Mississippi, accepting as true Evans' allegation that he is domiciled[2] in that state. (R. 19, at 7, Appx012.)

The District Court's reference to the factor weighing only "slightly" in favor of Mississippi law was appropriate because – quoting directly from the comments to Restatement § 145 – the District Court noted that the alleged "place of injury will not play an important role in the selection of the state of the applicable law" when the "injury has occurred in two or more states." (R. 19, at 7, Appx012.) The District Court aptly observed in this regard that Evans' Amended Complaint alleged that the Article had been "published online 'to a nationwide audience on multiple occasions' and, thus, his [alleged] injury is not limited to Mississippi." (*Id.*)[3]

_____

[2] In fact, Evans does not allege that he is "domiciled" in Mississippi, only that he is a "resident of the state." (R. 3, ¶ 1, Appx037.) "Domicile" has an element of permanence and exclusivity; it "is not necessarily synonymous with 'residence,' and one can reside in one place but be domiciled in another." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (internal citations omitted).

[3] Other circuit courts have also recognized this principle. For example, the Second Circuit has held that "in multistate defamation cases . . . the tort essentially lacks a locus, but rather injures plaintiff everywhere at once." *Kinsey*, 991 F.3d at 178 (quotation omitted). The Ninth Circuit has similarly concluded that the place of alleged injury in a multistate defamation case is not particularly relevant. *See Sarver v. Chartier*, 813 F.3d 891, 899 (9th Cir. 2016) ("Because the film was distributed nationwide and [plaintiff's] injuries would most likely have occurred in multiple states, 'the place of injury will *not* play an important role in the selection of the state of applicable law.'") (emphasis in original) (quoting Restatement § 145 cmt. e).

The District Court's conclusion is further supported by evidence in the record regarding both Evans' alleged residence and injury in Mississippi. That evidence, consisting of sworn interrogatory responses, documents, and deposition testimony elicited from Evans during jurisdictional discovery in the Mississippi action, revealed that Evans is, at best, a part-time resident of Mississippi – thereby diluting whatever interest Mississippi has in having its law applied to his claim – since for decades he has resided, paid taxes, and owned multiple properties in Massachusetts. (R. 16-1, Ex. 1 at 48:14-18, Appx250; R. 16-1, Ex. 1 at 130:9-131:6, Appx257.)

Even more significantly, Evans admitted he has suffered any alleged injury to his reputation in multiple states, not just Mississippi, diluting that state's interest in his claim even further. Evans swore that he suffered harm to his reputation "in Mississippi *and elsewhere*" (R. 14-2, Ex. B at 10, Appx226 (emphasis added).) Asked to explain, he testified he suffered injury "anywhere … I go" because "there is only one me." (R. 16-1, Ex. 1 at 112:11-113:6, Appx254.) Evans also testified to having family members in Virginia and friends in Massachusetts (R. 16-1, Ex. 1 at 48:14-18, Appx250; R. 16-1, Ex. 1 at 130:9-131:6, Appx257), and that the Article had harmed his reputation among "the alumni community of Georgetown Prep, which is thousands of people, very well-placed people *all over this country*." (R. 16-1, Ex. 1 at  113:9-114:14, Appx254-255 (emphasis added).)

The District Court declined to consider this extrinsic evidence, despite each of the parties having submitted and relied upon such evidence, or to convert HuffPost's Rule 12(b)(6) motion into one for summary judgment. (R. 19, at 5-6 & n.4, Appx010-011.) Yet, this Court can and should consider it. Federal appellate courts often treat a Rule 12(b)(6) motion to dismiss on appeal as one for summary judgment where, as here, both parties relied on extrinsic evidence below and the record is deemed to be complete.[4]

In *Ordonez v. Yost,* 289 F. App'x 553 (3d Cir. 2008), for example, this Court, after considering extrinsic evidence presented to the District Court, held that appellees were entitled to summary judgment, stating that "the District Court could have treated Appellees' motion [to dismiss or in the alternative for summary judgment] as one for summary judgment, *particularly because Appellant responded to it as such and the record is complete*." *Id*. at 555 (emphasis added). Other circuit courts have done the same. *See, e.g*., *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 940-41 (D.C. Cir. 2007) ("Where, as here, both

---

[4] Evans never opposed HuffPost's submission to the District Court of the extrinsic evidence gleaned from jurisdictional discovery in the Mississippi action or asked the District Court to refrain from considering it. To the contrary, Evans submitted extrinsic evidence in opposition to HuffPost's motion (*see, e.g.*, R. 14-2, Ex. A, Appx199-219; R14-2, Ex. B, Appx221-227) in an attempt to argue both that Mississippi was the state of his primary residence – Evans did not and could not deny his extensive connections to Massachusetts – and that he suffered the primary injury to his reputation in that state.

parties had sufficient opportunity to present evidence beyond the pleadings, *this court* has the authority to convert a motion to dismiss under Rule 12(b)(6) to a grant of summary judgment under Federal Rule of Civil Procedure 56 and affirm the judgment of the District Court.") (emphasis added); *Furman v. Cirrito*, 828 F.2d 898 (2d Cir. 1987) (holding that the District Court "might have treated the motion [under Rule 12(b)(1) and (6)] as one for summary judgment" and that "[d]espite its failure to do so, we nonetheless may refer to [certain agreements], which are integral parts of appellants' claim and of the record before us.") (internal citations omitted); 5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1366 (3d ed.) (noting that many federal courts "simply have treated the motion [to dismiss] on appeal as one for summary judgment when the circumstances make it appropriate to do so.").

Although the District Court's Order can be affirmed without resort to the extrinsic evidence presented to it by both parties, this Court can and should consider the full record. The extrinsic evidence further bolsters the conclusion that the District Court was correct in holding that New York, not Mississippi, has the most significant relationship to Evans' claim.

The District Court next properly found that the second factor under Section 145(2) of the Restatement favored New York law because the Article was published in HuffPost's New York headquarters. (R. 19, at 7, Appx012.) Although

Evans now appears to challenge the District Court's conclusion, Evans' Amended Complaint alleges that HuffPost's principal editorial offices are located in New York (R. 3, ¶ 2, Appx020), and in Evans' Complaints filed in Mississippi and New York he sued Ashley Feinberg, then a journalist with HuffPost and the reporter who researched and wrote the allegedly libelous Article. Feinberg is a resident of New York. There is no genuine dispute that the Article was researched, written, edited, and published in the State of New York.

The District Court then concluded that the third and fourth factors under Section 145(2) of the Restatement were either neutral or carried no weight because Evans is a resident of Mississippi and HuffPost is incorporated in Delaware and has its headquarters in New York, and because it was unclear whether the parties ever had a relationship or, if they did, where it was "centered." (R. 19, at 7, Appx012.)

In sum, the District Court properly applied each of the Section 145(2) factors in reaching its conclusion that New York, not Mississippi, has the most significant relationship to Evans' claim.

**B.      The District Court correctly determined that any presumption that the law of Evans' alleged domicile governs was overcome because New York has the most significant relationship to Evans' claim.**

Evans' real gripe is with the District Court's conclusion that the presumption that the law of his alleged domicile governs is overcome because of New York's

"interest in regulating its media." (R. 19, at 9, Appx014.) The District Court acknowledged that "Mississippi has an interest in protecting its citizens" but also recognized correctly that "[a]part from Evans residing in Mississippi, his home state has minimal interest in this litigation, while New York" has "strong policy interests in regulating its media and the conduct of its [media-oriented] citizens." (R. 19, at 8-9, Appx013-014.)

As an initial matter, New York's law weighs more heavily in the choice of law analysis because it is the state where the allegedly defamatory Article was researched, written, edited, and published. Where, as here, a plaintiff has suffered alleged reputational harm in two or more states, the place of alleged injury "will not play an important role in the selection of the state of the applicable law" and "the place where the defendant's conduct occurred will usually be given particular weight." Restatement § 145, cmt. e. The Third Circuit has explicitly recognized this principle in a different tort context. *See BP Chem. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 267 (3d Cir. 2000) (where the alleged tort injury occurred in two or more states, the place where the injury-causing conduct occurred should be given particular weight in choice-of-law) (citing Restatement § 145, cmts. e & f). There is no question that in this case, New York is where the alleged injury-causing conduct – research, writing, editing, and publication of the Article – occurred. *See also* Restatement § 150, cmt. e (in identifying the state

with the most significant relationship in a multistate defamation case, the court

must consider "where the defendant did his act or acts of communication, such as

assembling, printing and distributing" the material).

In addition, New York law should govern because New York has a

"significant" interest, as the newsgathering and media capital of the country, in

regulating its media companies and having its law and free speech protections

applied to libel claims asserted against journalists, newspapers, or media

companies, like HuffPost, that publish in New York. New York's strong interest in

protecting free speech and freedom of the press is reflected not only in its robust

anti-SLAPP statute – as Evans implies – but also in the "expansive" free speech

guarantee in New York State's Constitution and the "consistent [judicial] tradition

… of providing the broadest possible protection" to the press. *Immuno AG. v.*

*Moor-Jankowski*, 77 N.Y.2d 235, 249 (N.Y. 1991) (citation omitted).

While courts in Delaware may not have had, prior to this suit, occasion to

address New York's policy interests in the context of a multistate defamation case,

many other courts have recognized that interest and applied New York law after

conducting a choice of law analysis. In *Kinsey*, for example, the alleged libelous

article was published in print and online, the plaintiff lived in Maryland, and the

events discussed in the article occurred and allegedly affected plaintiff's

employment in the District of Columbia, facts similar to those alleged by Evans.

*Kinsey*, 991 F.3d at 178. Rejecting plaintiff's argument that the law of the District of Columbia applied, the Second Circuit concluded that New York had "the most significant interest in the litigation" because the defendant media company "was domiciled in New York, []the alleged defamatory statement emanated from New York," and "New York has strong policy interests in regulating the conduct of its citizens and its media." *Id.*

Numerous other courts have recognized New York's strong policy interests in regulating its media companies and have applied New York law in multistate defamation cases. For instance, in *Prince v. Intercept*, 634 F. Supp. 3d 114 (S.D.N.Y. 2022), similar to this case, the plaintiff sued a media defendant in New York after the action he filed in Wyoming, his state of residence, was dismissed for lack of personal jurisdiction. The court rejected the application of Wyoming law and applied New York law to the dispute after concluding that New York had a more significant interest in the litigation than Wyoming. *Id.* at 133 (recognizing New York's "strong policy interests in regulating the conduct of its citizens and its media") (quoting *Kinsey,* 991 F.3d at 178).

Nearly forty years ago, the court in *Davis v. Costa-Gavras*, 580 F. Supp. 1082 (S.D.N.Y. 1984), recognized New York's strong policy interest in a multistate libel case:

> [L]ibel is less plaintiff-centered than other torts, and rules on . . . statutes of limitation may reflect a state's concern to regulate without chilling

defendants' conduct. Strong policy reasons exist for deciding issues whose major impact is on the behavior of potential defendants according to the rules of the jurisdiction where the conduct that gives rise to liability takes place . . . especially when that conduct may be protected speech.

*Id.* at 1093 (applying New York law).

In yet another decision applying the Restatement "interests" analysis in a multistate defamation case, the court concluded – in analysis directly applicable here – that New York's policy interest in regulating allegedly defamatory content published in New York outweighed the interest of the state of plaintiff's domicile:

[W]hile the plaintiffs make conclusory allegations that their reputations were harmed in their home state, the Complaint does not identify any person or entity [in Rhode Island] who heard or read disparaging remarks about the plaintiffs or their business. Thus, apart from plaintiffs' residing and owning a law practice in the state, Rhode Island has minimal interest in this litigation. Instead, New York, where both defendants reside, and where the majority of the statements at issue were published, has the greatest interest in this matter. Plaintiffs' allegations include acts within New York and are of the type which New York has a strong interest in regulating. Accordingly, … the Court finds that New York has the most significant relationship to the alleged tort, and therefore its substantive law applies in this action.

*Deaton v. Napoli*, 2019 WL 156930, at *6 (E.D.N.Y. Jan. 10, 2019) (citations omitted). *See also Jacob v. Lorenz*, 626 F. Supp. 3d 672, at 685-86 (S.D.N.Y. 2022) (applying New York law in multistate defamation action where media defendant was located in New York, even though plaintiff lived in California and allegedly suffered injury there); *DeIuliis v. Engel*, 2021 WL 4443145, at *10 (S.D.N.Y. Sept. 27, 2021) (applying New York law and observing that "while

Pennsylvania has an interest in protecting its citizen from this type of tortious conduct, 'New York has strong policy interests in regulating the conduct of its citizens and its media' when it comes to governing the content of publications") (quoting *Kinsey*, 991 F.3d at 178); *Condit v. Dunne*, 317 F. Supp. 2d 344, 353-54 (S.D.N.Y. 2004) (New York interest is paramount "even when the target of the [allegedly defamatory] statement lives in another state"); *McClain v. Camouflage Assoc.*, 1994 WL 570874, at *2 (E.D. Pa. Oct. 18, 1994) ("[A]s the center of publishing in this country New York has a strong, widely recognized interest in uniformly regulating media defendants whose speech originates in New York.") (citations omitted).

Contrary to Evans' suggestion, therefore, the District Court's conclusion that New York has manifested a strong policy interest regarding libel claims against media companies publishing in the State is no outlier but, rather, is supported by a plethora of well-reasoned precedents.

Finally, application of New York law to an article published in New York, by a news outlet headquartered in New York, will protect expectations and create uniformity in the results of defamation actions, both of which are relevant factors in the choice of law analysis under Section 6. *See* Restatement § 6(2). "[A]s the national center of the publishing industry, [New York] has a significant interest in assuring that the risks and liabilities flowing from publishing and related options

contracts, negotiated and largely performed here, will be uniform." *Costa-Gavras*,

580 F. Supp. at 1092. Federal courts in New York have accordingly found that

publishers like HuffPost "attempt to mold their conduct to legal norms, with the

expectation that the legal consequences of their conduct will be predictable," and

have concluded that "[t]heir justified expectation that their conduct will be judged

by the rules of jurisdictions in which they carry on their activities merits

protection." *Id.*

>As stated in commentary to the Restatement:
>
>Situations may also arise where the defendant had little, or no, reason
>to foresee that his act would result in injury in the particular state. Such
>lack of foreseeability on the part of the defendant is a factor that will
>militate against selection of the state of injury as the state of the
>applicable law.

Restatement § 145 cmt. e.

If, in these circumstances, HuffPost were subject to the defamation law of

Mississippi, there would be "a serious question of deprivation of [HuffPost's] due

process rights" as that would make it subject to potential liability "under the law of

a state with which [it] has in no way voluntarily associated [itself]." *Costa-Gavras*,

580 F. Supp. at 1093. This conclusion is further buttressed by the Mississippi

district court's dismissal of Evans' first lawsuit for lack of personal jurisdiction on

the ground that HuffPost's actions bore no meaningful connection to the State of

Mississippi.

**C.    Evans disregards New York's long-standing policy to protect freedom of the press, and gives undue weight to the presumption in Section 150 of the Restatement.**

Evans' argument on appeal has two major flaws. First, he falsely claims that, in reaching its decision, the District Court relied exclusively on the recent (2020) amendment to New York's anti-SLAPP statute. But the recent amendments only enhanced what numerous courts have for decades recognized as New York's robust interest in protecting a free press and freedom of expression through its state Constitution and judicial precedent. The amendments were intended, as the District Court stated, to "provide the utmost protection for the free exercise of speech, petition, and association rights, particularly where such rights are exercised in a public forum with respect to issues of public concern." (R. 19, at 8, Appx013) (quoting *Palin v. New York Times Co.*, 510 F. Supp. 3d 21, 27 (S.D.N.Y. 2020).) And, as the District Court correctly noted, Mississippi has demonstrated no comparable policy interest in regulating the conduct of media companies, whether in-state or out-of-state; Mississippi does not even have an anti-SLAPP statute.[5]

Contrary to Evans' argument, many courts have relied on a state's robust anti-SLAPP regime as evidence of that state's interest in defamation actions

---

[5] A proposed Mississippi anti-SLAPP statute "died in committee" in 2022. *See* Mississippi, Public Participation Project, https://anti-slapp.org/mississippi (last visited Dec. 12, 2023); Mississippi Senate Bill 2628, LegiScan, https://legiscan.com/MS/text/SB2628/2022 (last visited Dec. 12, 2023).

against its citizens. For instance, in *Sarver*, the Ninth Circuit concluded that the inquiry under Section 6 of the Restatement weighed in favor of applying California law because, *inter alia*, California "has expressed a strong interest in enforcing its anti-SLAPP law to encourage continued participation in matters of public significance and to protect against a disturbing increase in lawsuits brought primarily to chill the valid exercise of constitutionally protected speech." *Sarver*, 813 F.3d at 899 (internal quotation marks omitted). The Ninth Circuit concluded that comity and the competing interests of the states involved (California and New Jersey) tilted in favor of California law, because California would appear to object strongly to the absence of a robust anti-SLAPP regime, whereas New Jersey, which did not have a strong anti-SLAPP regime, would be less harmed by the application of California law. *Id.* at 899-900.[6]

In *Dawe v. Corrections USA*, 2009 WL 1420969 (E.D. Cal. May 20, 2009), the district court performed a similar analysis and reached the same conclusion:

> Through enacting the Anti-SLAPP statute, however, California has indicated a stronger interest than Wyoming in adjudication of certain defamation and other claims, when they are brought against defendants who engage in Constitutionally-protected activity. The California legislature has identified this as an interest it seeks to advance, while

---

[6] The District Court adopted that same reasoning and applied it to this case, holding that "[w]hereas [New York] would appear to object strongly to the absence of a robust anti-SLAPP regime, [Mississippi's] interests would be less harmed by the use of [New York] law." (R. 19, at 9, Appx014) (quoting *Sarver*, 813 F.3d at 899-900).

the Wyoming legislature has not. This suggests application of California law to these claims…

*Id.* at *8 (applying California law to defamation claim).

Second, Evans argues that the presumption in favor of the plaintiff's state of domicile is a "heavy" one that "[t]o be fair" "can be overcome, but only in extremely rare cases." (Br. at 13.) Evans cites no authority supporting either proposition. The Restatement simply characterizes the presumption as a presumption, one that can be overcome if there are "sufficiently significant considerations" weighing in favor of the application of another state's laws. Nothing about the articulation of this standard in the Restatement (or its comments) suggests that the presumption can be overcome only in "extremely rare cases," and Evans cites no authority that says so.

In sum, Evans would have the Court apply the "presumption" favoring the state of plaintiff's domicile talismanically, effectively neutering the Restatement Section 6 factors. Under Evans' approach, it is unclear how a court could ever conclude that another state has a more significant interest in a claim of defamation than the state of the plaintiff's domicile, based on nothing more than the mere allegation of the plaintiff's residence and alleged injury there. The presumption and the ability to overcome it grounded on a state's significant interest in regulating a media defendant's conduct, along with the other factors in Section 6, would be eviscerated and replaced by a hard-and-fast rule brooking no exceptions,

one effectively mandating application of the law of the plaintiff's state of residence, regardless of the nature of the parties or the claim. Evans can point to no precedent supporting such an application of the Restatement factors, and in any event he identifies no interest of Mississippi more significant than the interest of New York recognized by the District Court.

**D.  The Delaware decisions Evans relies upon are distinguishable and their reasoning is inapposite because none involved a New York-based media company defendant or the interests New York has in regulating media companies that publish in the State.**

Lastly, Evans seems to believe that the District Court's Order is reversible because it "is the first instance known to [him] in which a Delaware court (state or federal) has ever adopted the substantive law of a state other than the one in which the plaintiff resides in the aggregate defamation context." (Br. at 21.) But there is no basis for that conclusion. The District Court was faced with a case that is factually distinguishable from prior (non-binding) precedent, and that raised issues of New York's policy interests not at all implicated in any of the decisions Evans presented to it. In those circumstances, the fact that the District Court declined to apply the presumption in favor of the state of plaintiff's residence does not render its Order erroneous.

Accordingly, each of the six decisions from Delaware courts Evans relies upon (Br. at 16-21)[7] is inapposite because in none was the court required to consider New York's "strong policy interests" in having its law and free press privileges govern the activities of a New York-based journalist and newsgathering organization regarding articles published in New York, a critical part of the Restatement Section 6 analysis.

In five of the cases – *Avenatti, Johnson, Perlman, Schmidt, Triestman* – *defendant* sought application of the law of plaintiff's domicile, while plaintiff suggested the law of Delaware or another state with little or no connection to the defamation. In *Avenatti*, plaintiff did not even oppose the media defendant's motion requesting, *inter alia*, application of the law of plaintiff's (undisputed) domicile in California.

Evans's heavy reliance on *Aoki* is particularly misplaced. The *Aoki* court appears simply to have assumed defendant's corporate press release was an "aggregate communication" implicating the presumption regarding a plaintiff's domicile, and the case did not involve a media company defendant, much less one

---

[7] Those cases are: (i) *Aoki v. Benihana, Inc.*, 839 F. Supp. 2d 759 (D. Del. 2012), (ii) *Stephen G. Perlman, Rearden LLC v. Vox Media, Inc.*, 2015 WL 5724838 (Del. Ch. Sept. 30, 2015), (iii) *Johnson v. Warner Bros. Ent., Inc.*, 2017 WL 588714 (D. Del. Feb. 14, 2017), (iv) *Avenatti v. Fox News Network, LLC*, 2021 WL 3603035 (D. Del. Aug. 13, 2021), (v) *Schmidt v. The Washington Newspaper Publ'g Co.*, 2019 WL 4785560 (Del. Super. Ct. Sept. 30, 2019), and (vi) *Triestman v. Slate Grp., LLC*, 2020 WL 1450562 (D. Del. Mar. 25, 2020).

based, and whose reporter researched, wrote, edited, and published an allegedly defamatory article, in New York. *Aoki*, 839 F. Supp. 2d at 765-66. Thus, all six decisions Evans relies on are factually distinguishable and their reasoning is inapposite.

Evans also argues that federal courts have "rejected the notion that a state's anti-SLAPP law should be given *any* weight in a choice of law analysis." (Br. 27-29 (emphasis in original).) But none of the cases Evans cites support this dubious proposition, which appears nowhere in the Restatement or its comments and which he appears to have fabricated out of whole cloth. At least one of the cases *supports* HuffPost's argument that, in its choice-of-law analysis, the District Court properly considered New York's expressed policy interest in having its law, including its anti-SLAPP statute, applied to defamation claims against New York-based media defendants.

In *Cheng v. Neumann*, 2022 WL 326785 (D. Me. Feb. 3, 2022), there was no need for the court to choose between the law of plaintiff's domicile and New York law because Plaintiffs were either domiciled or resided in New York. *Id.* at *1. Evans states the *Cheng* court rejected the concept that Maine's anti-SLAPP law outweighed the interest of New York in protecting its citizens (*id.* at *5). But he neglects to mention that in applying New York's anti-SLAPP statute, the court explicitly recognized, for purposes of its choice of law analysis, that "New York's

anti-SLAPP law manifests an interest in ensuring the free flow of information and 'provid[ing] the utmost protection for the free exercise or speech, petition, and association[al] rights' from vexatious litigation." *Id.* (quoting *Palin*, 510 F. Supp. 3d at 27). This is precisely the argument advanced by HuffPost in this case.

*Adelson v. Harris*, 973 F. Supp. 2d 467 (S.D.N.Y. 2013) also supports HuffPost's argument. The *Adelson* court recognized that as far back as 1984, in *Davis v. Costa-Gavras*, 580 F. Supp. 1082, the Southern District of New York court "held that New York publishers" – like HuffPost here – "had a particularly significant interest in having the laws of their domicile applied" in a defamation case, and that "[c]ourts in this district have followed *Costa-Gavras* in a number of defamation cases, applying New York law where publishing and media defendants were domiciled in New York, even where the plaintiff was domiciled in another state." *Adelson*, 973 F. Supp. 2d at 478 (citations omitted). Defendants in *Adelson* simply "failed to persuade [the court] that the District of Columbia's particular interest in this case is analogous to New York's interest in protecting New York's publishers and media industry." *Id.* at 479.

In turn, *Ranbaxy Lab'y, Inc. v. First Databank, Inc.*, 2014 WL 982742 (M.D. Fla. Mar. 12, 2014) and *Schering Corp. v. First Databank Inc.*, 2007 WL 1176627 (N.D. Cal. Apr. 20, 2007) are both distinguishable because the question there was whether defendant could rely on California's anti-SLAPP law to strike

the complaint, not which state had the most significant relationship to the claim, or whether or how California's anti-SLAPP regime evidenced that relationship. In denying the motions to strike, the court in both cases focused solely on the impact of procedural aspects of California's anti-SLAPP law.[8]

The remaining decisions Evans cites are even more distinguishable from the instant case, rendering them wholly inapposite.[9]

---

[8] The *Ranbaxy* court noted that if it applied California's anti-SLAPP law discovery would be stayed, while New Jersey had an established policy interest in allowing plaintiffs with libel claims to engage in discovery before being subject to a ruling on the merits. *Ranbaxy*, 2014 WL 982742, at *6 & n.8. In *Schering* (an action filed in New Jersey and transferred to California) the court concluded that the application of California's anti-SLAPP statute would frustrate New Jersey's policy of using summary judgment rather than an anti-SLAPP statute to evaluate defamation claims. *Schering*, 2007 WL 1176627, at *6. None of those procedural concerns are relevant here. The only issue on appeal is whether the District Court was correct in concluding that, under the factors set forth in the Restatement, New York has a more significant relationship to (and interest in) Evans' claim than Mississippi. New York's recently amended anti-SLAPP statute was merely a factor in the District Court's holding recognizing New York's significant policy interest in regulating media defendants that publish in the state. The District Court properly concluded that, other than its generalized interest stemming from Evans' purported residence, Mississippi had no comparably significant interest in the adjudication of Evans' claim of defamation.

[9] *Franklin Prescriptions, Inc. v. N.Y. Times, Co.*, 267 F. Supp. 2d 425 (E.D. Pa. 2003), involved a pharmacy plaintiff that was located in Philadelphia for 30 years and suffered its alleged injury exclusively in that state. In contrast in this case, the District Court correctly found that Evans suffered alleged injury in multiple states. In *Condit v. Dunne*, 317 F. Supp. 2d 344 (S.D.N.Y. 2004), plaintiff was elected to the U.S. House of Representatives from California. His reputation was California-centered, the allegedly defamatory statements were made in California, as well as in New York, and the defendant (a journalist) did not publish "through a New York media outlet." *Id.* at 355. *Kamelgard v. Macura*, 585 F.3d 334 (7th Cir. 2009) did not involve multistate defamation at all, but, rather, a letter

### E. The District Court correctly concluded, upon applying New York law, that the action was time-barred.

When a Delaware court sitting in diversity borrows the statute of limitations of another state, "the borrowed statute is accepted with all its accoutrements," *Frombach v. Gilbert Assocs., Inc.*, 236 A.2d 363, 366 (Del. 1967), included among which "are rules governing the time when causes of action accrue, and any savings and/or tolling statutes." *Delargy v. Hartford Accident & Indem. Co.*, 1986 WL 11562, at *2 (Del. Super. Oct. 8, 1986) (citations omitted). Thus, application of New York law and its statute of limitations for libel claims required the District Court to also apply New York's savings statute, N.Y. Civ. Prac. L. & R. § 205(a).

Pursuant to that statute, Evans' action could not benefit from the six-month "savings" period because his action in Mississippi had been dismissed for lack of personal jurisdiction, an explicit exception set forth in the statute. *See Ezra v. Weitz & Luzembourg, P.C.*, 2018 WL 10497896, at *2 (S.D.N.Y. Nov. 28, 2018);

---

sent to an Illinois College Board allegedly disparaging a New Jersey surgeon, *id.* at 336. Moreover, New York had no skin in the game – the issue was whether Illinois or New Jersey law applied, and there was no speech by a New York media company to regulate or protect. *Id.* at 340-44. Finally, in *Machleder v. Diaz*, 538 F. Supp. 1364, 1369 (S.D.N.Y. 1982), a reporter traveled to New Jersey to research his report. He investigated, interviewed plaintiff, and met with Newark's municipal authorities in New Jersey, all about potentially hazardous waste in New Jersey. Taking into consideration "New Jersey's … interest in governing the fault of those who come within its boundaries to investigate the news and later broadcast it there," the court applied New Jersey law. *Id.* at 1370. In this case, HuffPost's reporter neither went to nor contacted any sources in Mississippi, and the Article had nothing to do with the state. (*See* R. 3, Exs. 1-3, Appx052-070.)

*Wydallis v. U.S. Fidelity & Guar. Co.*, 63 N.Y.2d 872, 874 (N.Y. 1984) (holding that where a prior action is dismissed for lack of personal jurisdiction, the "[savings] statute cannot be applied . . . to extend the period of limitations"). Therefore, the District Court correctly concluded that this action is time-barred, and properly dismissed it with prejudice.

## CONCLUSION

For the foregoing reasons, the District Court's Order should be affirmed.

Dated: December 13, 2023

HUNTON ANDREWS KURTH LLP

*/s/ Joseph J. Saltarelli*
Joseph J. Saltarelli
Silvia N. Ostrower
200 Park Avenue
52nd Floor
New York, NY 10166
(212) 309-1000
jsaltarelli@HuntonAK.com
sostrower@HuntonAK.com

POTTER ANDERSON &
CORROON LLP

Jonathan A. Choa (#5319)
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE  19801
(302) 984-6000
jchoa@potteranderson.com

*Attorneys for Appellee*

## CERTIFICATE OF BAR ADMISSION

## 3d Cir. L.A.R. 28.3(d) Bar Membership Certification

Pursuant to Third Circuit Local Rule of Appellate Procedure 28.3(d), Appellee TheHuffingtonPost.com, Inc. hereby certifies that Joseph J. Saltarelli and Silvia N. Ostrower of Hunton Andrews Kurth LLP, and that Jonathan A. Choa of Potter Anderson & Corroon LLP, are members of the bar of this Court.

Dated:  December 13, 2023

HUNTON ANDREWS KURTH LLP

*/s/ Joseph J. Saltarelli*
Joseph J. Saltarelli
Silvia N. Ostrower
200 Park Avenue
52nd Floor
New York, NY 10166
(212) 309-1000
jsaltarelli@HuntonAK.com
sostrower@HuntonAK.com

POTTER ANDERSON &
CORROON LLP

Jonathan A. Choa (#5319)
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE  19801
(302) 984-6000
jchoa@potteranderson.com

*Attorneys for Appellee*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE OF APPELLATE PROCEDURE 31.1(C)

I certify the following:

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains 7,706 words, excluding the parts of the brief exempted by Fed. R. App. P. Rule 32(f).

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type-style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally-spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies, and API V3 has been run on the file containing the electronic version of this brief and no viruses have been detected.

Dated: December 13, 2023

HUNTON ANDREWS KURTH LLP

*/s/ Joseph J. Saltarelli*
Joseph J. Saltarelli
Silvia N. Ostrower
200 Park Avenue
52nd Floor
New York, NY 10166
(212) 309-1000
jsaltarelli@HuntonAK.com
sostrower@HuntonAK.com


POTTER ANDERSON &
CORROON LLP

Jonathan A. Choa (#5319)
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801
(302) 984-6000
jchoa@potteranderson.com

*Attorneys for Appellee*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that a copy of the foregoing Brief for Defendant-Appellee was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: December 13, 2023

HUNTON ANDREWS KURTH LLP

*/s/ Joseph J. Saltarelli*
Joseph J. Saltarelli
Silvia N. Ostrower
200 Park Avenue
52nd Floor
New York, NY 10166
(212) 309-1000
jsaltarelli@HuntonAK.com
sostrower@HuntonAK.com

POTTER ANDERSON &
CORROON LLP

Jonathan A. Choa (#5319)
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801
(302) 984-6000
jchoa@potteranderson.com

*Attorneys for Appellee*

124142.0000007 DMS 304716693v11